_____

No. 95-2075
_____

Laurina Price,                        *
                                      *
     Plaintiff/Appellant,             *
                                      *
     v.                               *    Appeal from the United States
                                      *    District Court for the
S-B Power Tool, also known as         *    Eastern District of Arkansas
Skil Corporation, a division          *
of Emerson Electric Company,          *
                                      *
     Defendant/Appellee.              *

_____

               Submitted:   December 15, 1995

                  Filed:    January 30, 1996
_____

Before MAGILL, BRIGHT, and MURPHY, Circuit Judges.
_____

MURPHY, Circuit Judge.


     Laurina  Price  appeals  from  a  judgment  dismissing  her
employment discrimination claim brought under the Americans with
Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 - 12213, and from
the  denial  of  her  motion  for  reconsideration.[1]   Her  complaint
alleged  that  S-B  Power  Tool  (Skil)[2]  terminated  her  employment

_____

     [1]On appeal, Price has not presented any specific argument
related to the denial of this motion.

     [2]Skil is incorrectly identified in the caption as a division
of Emerson Electric Company. (Emerson).  In fact, Skil is
partially owned by Emerson.

because she suffers from epilepsy.  The district court[3] granted summary judgement to Skil after determining that Price had failed to establish a prima facie case and had not shown that Skil's proffered legitimate nondiscriminatory reason was pretextual.  We affirm.

The background facts are not in dispute.  In 1984 Price was hired as an assembler by Skil, which manufactures handheld power tools.  She continued working at that job for more than eight years, except for a brief period of time when she was classified as a line inspector.  The record indicates that Price suffers from epilepsy or a seizure disorder and that Skil was aware of her condition.  Skil does not dispute that Price was able to perform her assembly job well on the days that she reported to work.

Price had attendance problems throughout her employment at Skil and had received a number of verbal and written warnings as a result.  She was discharged on April 19, 1993, after failing to report to work on April 12 and 13 after she had been given formal written warnings on March 1 and January 11.  At the time of her termination she was informed that the reason for the action was her excessive absences.

Skil's attendance policy requires that an employee's absentee rate not exceed three percent. Generally, an employee who violates the policy receives a verbal warning for the first offense, a written warning for the second offense, and termination for the third offense, but the policy provides that discharge is permissible after an initial verbal warning.

Skil determines an employee's absentee rate by dividing the number of unscheuled job absences by the number of days worked in

_____

[3]The Honorable George Howard, Jr., United States District Judge for the Eastern District of Arkansas.

a rolling twelve month period.  The calculation does not include long term absences after the first four days, declared bad weather days, scheduled absence for vacation, scheduled absence for holidays, approved leaves of absence, or absences of less than a full day.

Skil has a practice of granting leaves of absence, including medical leaves of absence, to any employee who requests them.  Skil had encouraged Price to take leaves of absence when necessary and had never denied her request for one.  Price was aware of this policy and had taken leaves of absence for medical, personal, and pregnancy reasons.  During the year prior to her dismissal, she took maternity leave from November 11, 1991 to June 28, 1992, personal leave unrelated to her epilepsy from September 16 to 21, 1992, and medical leave (presumably for her epilepsy) from October 6 to 27, 1992 and from November 30, 1992 to January 4, 1993.  These approved leaves were not counted against her in the calculation of her absentee rate.  The plant was also shut down several times during the year prior to her termination: June 29 to July 10, October 1 to 2, November 23 to 27, December 28, 1992 to January 4, 1993, January 20 to 29, February 15 to 26, and March 22 to 26, 1993.

During the twelve month period before her termination, Price's attendance record was poor and she received a series of warnings. After her return from a seven month pregnancy leave, and not counting scheduled absences, she was absent from work without approval on July 30, August 11, August 24, August 25, and September 11.  At this point her absentee rate exceeded three percent, and Price was given a verbal warning.  After she missed work on November 9 and 16, 1992, she was given another verbal warning about her attendance.  In spite of the verbal warnings, Price missed work on January 11, 1993, raising her absentee rate from 3.7 percent to 4.6 percent.  At that time she was issued a written warning that her attendance level was unacceptable.  She missed another day of

3

work on February 1, 1993, and a second written warning was issued on March 1, warning her that she would be terminated if her absenteeism rate did not fall below three percent.

At the time of the second written warning on March 1, Price's supervisor instructed her to call in to arrange for a leave of absence if she was going to miss any more days because she would be terminated unless her absenteeism rate decreased. The next month Price failed to report to work on April 13 and 14, 1993, and she did not contact her supervisor to arrange for a leave of absence. She was terminated shortly thereafter.

Many of Price's absences were not attributable to her seizure disorder. For example, her absences on April 13 and 14 were caused by stomach cramps unrelated to her disability.[4] Price concedes that at least two of the remaining ten absences were for care of her infant and one was for attending a funeral. Presumably the remaining absences were related to her epilepsy.

On appeal Price claims that summary judgment was inappropriate because there was sufficient evidence to establish a prima facie case of employment discrimination and create an issue of fact whether Skil's claim that she was fired for absenteeism was pretext.

Summary judgment is appropriate if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). All evidence and inferences must be viewed in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The non-moving party, however, may not rest upon mere

---

[4]Although Price asserts that her stomach problems arose from pressures at work, she does not claim that she was pressured because of her epilepsy.

denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). We review a grant of summary judgment de novo. Crawford v. Runyon, 37 F.3d 1338, 1340 (8th Cir. 1994).

The ADA prohibits employment discrimination "against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). A plaintiff may use the burden-shifting framework identified in McDonnell Douglas v. Green, 411 U.S. 792 (1973), and St. Mary's Honor Center v. Hicks, 113 S. Ct. 2742 (1993), to prove a claim of intentional discrimination. This method of proof requires a plaintiff to establish her ability to prove a prima facie case. In the absence of an explanation from the employer, this creates a rebuttable presumption of discrimination. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). The burden of production then shifts to the employer to come forward with a legitimate, nondiscriminatory reason for its actions. Id. Finally, the burden shifts back to the plaintiff to prove that the defendant's proffered reason is pretextual and that intentional discrimination was the true reason for the defendant's actions. See Hicks, 113 S. Ct. at 2747.

To establish a prima facie case under the ADA, a plaintiff must show that she is a disabled person within the meaning of the ADA, that she is qualified to perform the essential functions of the job (either with or without reasonable accommodation), and that she has suffered an adverse employment action under circumstances from which an inference of unlawful discrimination arises. Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1112 (8th Cir. 1995); Wooten v. Farmland Foods, 58 F.3d 382, 385 (8th Cir. 1995); Johnson v. Legal Services of Arkansas, Inc., 813 F.2d 893, 896 (8th Cir. 1987) (Rehabilitation Act of 1973). An inference of discrimination may be raised by evidence that a plaintiff was replaced by or treated less favorably than similarly situated employees who are

5

not in the plaintiff's protected class.[5] <u>Johnson</u>, 813 F.2d at 896.

Price did not meet her burden of establishing a prima facie case because the record does not show that Price's termination occurred under circumstances that would permit an inference of discrimination.[6] Price has not presented any facts tending to suggest that she was terminated because of her disability. She asserts that she was treated differently from other similarly situated nondisabled employees, but her claim is not supported by her own evidence. She identifies two non-disabled employees with similar attendance problems, but does not show that they were treated any differently. Both had received oral and written warnings in response to their attendance rates rising above three percent. Neither was actually terminated, but that was because both quit voluntarily soon after receiving the written warning.

The evidence in the record, when viewed in a light most favorable to Price, shows only that she was terminated for being absent from work on April 12 and 13 without calling to arrange for leave time after being instructed specifically to do so. Her absences on those days were not related to her epilepsy, and she does not claim that her epilepsy prevented her from calling in to make arrangements for leave time. Her supervisor had warned her in

---

[5]Although our court has not modified the typical burden-shifting framework to fit disability cases, the Fourth Circuit has held that other types of evidence may also create an inference of discrimination in these cases since it may not always be possible to determine whether another employee is a member of the protected class. <u>See</u> <u>Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.</u>, 53 F.3d 55, 58-59 (4th Cir. 1995). <u>But see</u> <u>Daigle v. Liberty Life Ins. Co.</u>, 70 F.3d 394, 396 (5th Cir. 1995).

[6]Skil also claims that Price was not a "qualified individual" under the ADA because regular attendance was an essential function of her job. Because there is insufficient evidence to suggest that Price was dismissed because of her epilepsy, we do not reach this issue.

6

March that she must call in to arrange for leave time if she was going to be absent for any reason. The record is insufficient to create a prima facie case of discrimination.

Summary judgment would have been appropriate even if Price had established a prima facie case of discrimination because Skil offered a legitimate nondiscriminatory reason for her dismissal and Price failed to come forward with any evidence of pretext. St. Mary's Honor Center v. Hicks, 113 S. Ct. 2742, 2747 (1993). Skil asserted that Price was dismissed because she had violated the company's attendance policy and that enforcement of the attendance policy was necessary because of the nature of the work; each person on the assembly line is assigned certain duties to perform and without advance notice of absences it is difficult to obtain a replacement worker, particularly one with the necessary skills. Price has not shown the existence of any facts which would permit a jury to conclude that this reason was pretextual or that intentional discrimination was the true reason for her termination. See Krenick v. County of LeSueur, 47 F.3d 953, 958 (8th Cir. 1995) (ADEA).

Price claims that there is evidence in the record to suggest that Skil's asserted reasons were pretextual, but she relies primarily on speculation to support her claim. She suggests that Skil may have been influenced by her many leaves of absence because it has acknowledged that they created some burden on the company. It is undisputed, however, that leaves of absence were excused and encouraged by Skil and were not counted against her in the calculation of her absentee rate.

Price also suggests that after the company's ownership partially changed in 1992, Skil changed its attitude toward her because of her epilepsy. She asserts that until 1992 Skil had accommodated her disability by not firing her even though she had poor attendance, but that after 1992 it refused to accommodate her

7

by ultimately firing her. The evidence shows that Price had received numerous warnings about her excessive absenteeism throughout her employment with the company, however. Price points to no evidence to suggest that she ever asked for an accommodation or that the new partial owner had discriminatory motives or even influenced the decision to terminate her.

Finally, Price says that Skil fired her even though her absences on April 13 and 14 should not have been counted against her absentee rate. She argues that the two days should have been converted to excused absences when she provided Skil with a doctor's note confirming her stomach disorder. She does not dispute that she had been specifically instructed to call her supervisor if she was going to be absent, however, or that the record shows no attempt by her to notify the company that she would be absent at the time of her illness. She did not provide the note from her doctor until April 19, 1993, the day that she was terminated. Price has not met her burden of showing that Skil's reason for terminating her was pretextual.

After a careful examination of the record we conclude that the district court did not err in granting summary judgment in favor of Skil. Price failed to present a prima facie case of discrimination and, even if she had done so, she failed to come forward with evidence that Skil's proffered legitimate nondiscriminatory reason was a pretext.

For these reasons the judgment of the district court and its order denying reconsideration are affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

8