981 F.Supp. 1254 (1997)
John BIZELLI, Plaintiff,
v.
Parker AMCHEM and Henkel Corporation, Defendants.
No. 4:96 CV 00322 SNL.
United States District Court, E.D. Missouri, Eastern Division.
September 22, 1997.
*1255 Jerome J. Dobson, Jonathan C. Berns, Gregory A. Rich, Weinhaus and Dobson, St. Louis, MO, for Plaintiff.
Francis X. Bujold, Chandler and Bujold, Troy, MI, for Defendants.

ORDER
LIMBAUGH, District Judge.
This matter is before the Court on the Defendants' Motion for Summary Judgment (# 44). The underlying employment discrimination action arises under the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12101 et seq. The Plaintiff argues that the Defendants failed to reasonably accommodate him after his surgery for testicular cancer. The Defendants maintain that the Plaintiff is not a qualified individual with a disability under the ADA. Alternatively, they argue that the Plaintiff was unable to perform the essential functions of his job. Finally, the Defendants argue that the Plaintiff should be estopped from claiming that he is a qualified individual under the ADA because he received disability benefits from October 27, 1994, through December 31, 1994.
Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir.1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir.1988).
Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).
In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir.1976). With these principles in mind, the Court turns to an examination of the facts.
The Plaintiff was hired as a chemical operator in December, 1987. As such, he was asked to perform four jobs related to the manufacturing and packaging of the Defendants' chemical products: mixing, draw-off, shipping and waste treatment/raw materials receiving. The Plaintiff generally worked in mixing and draw-off. Since there were only six chemical operators at the Defendants' St. Louis plant, however, he was required to be cross-trained in each position. The Plaintiff satisfactorily performed his duties as chemical operator without incident until his termination in February, 1995.
On or about April 28, 1994, the Plaintiff was diagnosed with testicular cancer. He *1256 was immediately placed on a non-work related medical leave of absence. Consistent with company policy, he began receiving short term disability benefits upon his fifth consecutive day of absence.
Due to the severity of his condition, he began an aggressive treatment program including four cycles of chemotherapy and, ultimately, a major surgical procedure on August 18, 1994. Although the Plaintiff has been "cancer free" since his surgery, he suffered numerous complications during his recovery.[1]
On September 19, 1994, the Plaintiff's oncologist sent the Defendants a letter releasing the Plaintiff for light duty assignment after October 16, 1994. The Plaintiff was to abide by a ten pound lifting restriction for a period of approximately two months, at which time it was expected that he would be able to return to full unrestricted duty.
The Defendants denied the Plaintiff's request to return to work with a ten pound lifting restriction, concluding that he was unable to perform the essential functions of the chemical operator position, with or without reasonable accommodation. The Defendants instructed the Plaintiff to apply for long term disability benefits.[2]
The Plaintiff applied for and received long term disability benefits from October 27, 1994, through December 31, 1994. Consistent with company policy, the Plaintiff was removed from the company payroll and his employment was terminated when he began receiving long term disability benefits. The Plaintiff was not permanently replaced, however, since it was expected that he would return to work in January, 1995. The Defendants maintain that this was deviation from their normal policies and procedures.
In late December, 1994, the Plaintiff sent the Defendants his release for full unrestricted duty beginning January 1, 1995. On January 4, 1995, the Defendants acknowledged their receipt of the release and informed the Plaintiff that he could return to work at level of compensation he was receiving prior to his leave of absence. His start date, however, was made contingent upon his successful completion of the company's "pre-employment physical." The Plaintiff maintains that no other employee at the Defendants' St. Louis plant had ever been required to undergo such an examination.
Although the Plaintiff successfully completed the first part of his medical examination, he was given certain temporary restrictions after his functional capacity exam on January 13, 1995.[3]
At a meeting on February 3, 1995, the Plaintiff was told that he could return to work but that his condition would be reevaluated at some future date. He alleges that the Defendants suggested that his employment could be terminated if he was unable to demonstrate full capacity in these later examinations.
The Plaintiff refused to return to work unless the temporary restrictions were lifted. When the Defendants denied his request, the Plaintiff left the meeting. His employment was terminated that same day. The Plaintiff's position was ultimately filled by Brent Williams, the temporary replacement who was hired during the Plaintiff's leave of absence.
The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A plaintiff bringing a claim under the ADA may use the burden-shifting framework announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See Aucutt v. Six Flags Over Mid-America, 85 F.3d 1311, 1318 (8th Cir.1996); Price v. S-B *1257 Power Tool, 75 F.3d 362, 364-65 (8th Cir. 1996).
To establish a prima facie case of intentional disability discrimination, a plaintiff must show: 1) that he was "disabled" as defined by the ADA; 2) that he was qualified to perform the essential functions of the job (with or without reasonable accommodation); and 3) that he was subject to an adverse employment action under circumstances giving rise to an inference of unlawful discrimination. Aucutt, 85 F.3d at 1318; Price, 75 F.3d at 365; Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1112 (8th Cir.1995). An inference of discrimination may be raised by evidence showing that plaintiff was replaced by or treated less favorably than similarly situated employees outside of the protected class. Price, 75 F.3d at 365.
The Defendants argue that the Plaintiff cannot establish a prima facie case of intentional disability discrimination because he is not a qualified individual with a disability under the ADA.
The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such impairment." 42 U.S.C. § 12102(2).
There is no dispute that cancer can constitute a physical impairment under the ADA. See H.R.Rep. No. 101-485, pt. 3, at 28 (1990), reprinted in, 1990 U.S.C.C.A.N. 445, 451 ("Although the definition does not include a list of all the specific conditions, diseases, or infections that would constitute physical or mental impairments, examples include: ... cancer ...."); see also Mark v. The Burke Rehabilitation Hospital, 6 A.D.Cases 1156, 1997 WL 189124 (S.D.N.Y.1997). The Defendants argue, however, that the Plaintiff's cancer was not substantially limiting his major life activities at the time they refused his request for reemployment. They maintain that "[a]n impairment that disqualifies a person from only a narrow rank of jobs is not considered a substantially limiting one." Wooten v. Farmland Foods, 58 F.3d 382, 386 (8th Cir.1995).
The Plaintiff insists that whether his major life activities were substantially limited at the time the Defendants refused his request for reemployment is irrelevant because he had "a record of such an impairment." 42 U.S.C. § 12102(2)(B); see also School Board of Nassau County v. Arline, 480 U.S. 273, 281, 107 S.Ct. 1123, 1127-28, 94 L.Ed.2d 307 (1987) (hospitalization for tuberculosis sufficient to establish a record of impairment.); but see Demming v. Housing and Redevelopment Authority of Duluth, Minn., 66 F.3d 950, 955 (8th Cir.1995) (hospitalization alone is insufficient to establish an impairment under the Act).[4]
In this case, the Court concludes that the Plaintiff has established a record of an impairment. The Plaintiff had been on a leave of absence and receiving short term disability benefits since he was diagnosed with testicular cancer. Moreover, the Defendants were aware of both his chemotherapy and his surgery. Plainly, this provision of the ADA was intended to ensure that former cancer patients are not discriminated against on the basis of their prior medical history. See EEOC Interpretative Guidelines, 29 C.F.R. Pt. 1630, App. § 1630.2(k) ("[T]his provision protects former cancer patients from discrimination based on their prior medical history."). Accordingly, the Court finds that the Plaintiff has met his burden of establishing that he is a qualified individual with a disability under the ADA.
Alternatively, the Defendants argue that the Plaintiff cannot establish a prima facie case of intentional disability discrimination because he was unable to perform the essential functions of the chemical operator position, with or without reasonable accommodation. The Plaintiff, however, has created a genuine issue as to which functions are essential to the chemical operator position. The depositions testimony alone clearly suggests that all of the chemical operators were not required to perform each and every function of the job on a daily, weekly or monthly *1258 basis. The Plaintiff also submitted a expert witness report to bolster his assertion that he could have performed the job with minimal accommodation. Furthermore, while it is true that an employer has no duty to create a job, none of the cases cited by the Defendants stand for the proposition that a two-month light duty assignment is per se unreasonable under the ADA. Accordingly, the Court finds that the Plaintiff has met his burden with respect to his ability to perform the essential functions of the job and the reasonableness of any accommodations that he may have needed.
Finally, the Court finds the Defendants' judicial estoppel argument to be disingenuous. Contrary to their assertions, the Plaintiff has not taken inconsistent positions with respect to his disability. See e.g., Dush v. Appleton Electric Company, 124 F.3d 957, 960-65 (8th Cir.1997). Indeed, it was the Defendants' refusal to accommodate his light duty request which precipitated his need for long term disability benefits.
Since the Defendant has not advanced any arguments against the third prong of the Plaintiff's prima facie case or a legitimate nondiscriminatory reason for their actions, the Court concludes that the Plaintiff has met all of his burdens at this stage of the proceedings.
Accordingly,
IT IS HEREBY ORDERED that the Defendants' Motion for Summary Judgment (# 44) is DENIED.
NOTES
[1] The Plaintiff suffered a wound following the surgery which slowed his recovery time. He also demonstrated significant hematologic, neurologic and muscular deficits as a result of the various treatments.
[2] The Plaintiff's short term disability benefits were scheduled to expire on October 27, 1994.
[3] The Court offers no opinion as to the authenticity of the medical records supporting these conclusions. This is essentially a factual dispute and is unnecessary to the resolution of the instant motion.
[4] The Court notes that decisions interpreting the Rehabilitation Act, 29 U.S.C. § 794, are applicable and authoritative under the ADA. Allison v. Department of Corrections, 94 F.3d 494, 497 (8th Cir.1996).