UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

———————————

No. 96-1818

———————————

DARLENE BERG,                          *
                                       *
        Plaintiff-Appellant,           *
                                       *
        v.                             *
                                       *        Appeal from the United
States                                 
GREGORY BRUCE; INDEPENDENT             *        District Court for the
District
SCHOOL DISTRICT NO. 601.,              *        of Minnesota
                                       *
        Defendants-Appellees.          *

———————————

Submitted:  November 18, 1996

Filed:  April 23, 1997

———————————

Before BEAM, FRIEDMAN[*], and LOKEN, Circuit Judges.

———————————

FRIEDMAN, Circuit Judge.
        The United States District Court for the District of Minnesota[**]
granted summary judgment dismissing the appellant Berg's suit challenging
her discharge by the appellee Independent School District Number 601
(School District) as a third grade Minnesota public school teacher.  She
contended that her discharge violated the Age Discrimination

———————————

[*] DANIEL M. FRIEDMAN, of the United States Court of Appeals for the Federal Circuit, sitting by designation.

[**]The Honorable Michael J. Davis, United States District Court for the District of Minnesota.

in Employment Act (Age Discrimination Act), 29 U.S.C. § 623, denied her constitutional rights in violation of 42 U.S.C. § 1983, and violated various Minnesota state law provisions. The district court held that Berg had not provided sufficient evidence to entitle her to go to a jury on any of her claims. We affirm.

I.

The underlying facts are not disputed. In the fall of 1992, Berg had been teaching third grade for five years. The appellee Bruce was the principal of her school and supervised and evaluated her. He and Berg had disagreed about Berg's teaching methods and, as early as the 1988-1989 school year, they had had conflicts on the subject.

Prior to the 1992-1993 school year, the School District and Bruce received fifteen requests from parents that their children not be assigned to Berg's classroom. Although the school had received such requests in the past, the large number concerned Bruce and he decided to examine Berg's teaching and grading practices.

Bruce's son was a student in Berg's social studies class. Because Bruce was dissatisfied with a grade Berg had given his son and after his son told him that at least one student was failing her class, Bruce met with Berg to discuss her grading practices and requested her to provide her grade book to him. After reviewing the grades, Bruce asked Berg to reteach and retest one of the units.

Berg spoke and wrote to the school superintendent Maryanne Schmidt, stating that Bruce was making these demands because his son had difficulty with the material. In her letter to Schmidt, Berg asserted that Bruce's treatment of her constituted harassment and that "she would find a legal way to deal with it." Schmidt responded that Berg and Bruce had a personality conflict, and suggested that Berg have a third party present whenever she met with Bruce.

2

Bruce began frequently to observe Berg's classes. In early December, 1992, Bruce issued to Berg a notice of deficiency criticizing her teaching style, classroom control and grading procedures. He made suggestions for correcting each deficiency and indicated that he would visit Berg's classroom weekly to check on her progress. Berg refused to discuss the matter with Bruce and told him that she would be absent the following Monday. Berg did not come to work on the following Tuesday or Wednesday either, and did not notify Bruce of these absences. In January, 1993, Berg responded to the deficiency notice with a letter to Superintendent Schmidt, in which she asserted that the notice was "another attempt to discredit and harass me." She stated that Bruce's "comments and critiques at this time are motivated more by ill will than a genuine desire to improve the quality of education." She requested that the superintendent order the principal to apologize to her for the "unfounded criticism."

In January, 1993, Berg attended a meeting with Bruce to discuss her job performance. Berg's attorney was present, but Berg refused to discuss anything with Bruce. Bruce then wrote a letter to Berg criticizing both her teaching and grading practices and indicating that her refusal to meet with him or others about her deficiencies and other employment matters, unless her lawyer or union representative was present, made even minimal communication impossible. Berg again responded with a letter to Superintendent Schmidt. In this letter, dated February 16, 1993, Berg first asserted that Bruce's actions towards her were motivated by her age. She stated that she "received orders from Mr. Bruce to do things that were not required of other younger, less experienced teachers with less seniority."

Bruce observed Berg's class thirteen times during the school year. He made thirty written requests and scheduled nine meetings with Berg. During one of Bruce's visits to her classroom, Berg refused to teach while Bruce was present. She slammed the door after Bruce left the room, and then left the building without informing Bruce. Bruce issued a written reprimand to Berg for insubordination and unprofessional conduct. Berg

continued to refuse to meet with Bruce or to cooperate with her supervisors to correct the deficiencies.

On June 8, 1993, the school board terminated Berg for her refusal to cooperate in evaluating her grading system and responding to her deficiencies, insubordination, unprofessional conduct and unwillingness to discuss job-related issues. When terminated, Berg was forty-nine years old. The School District replaced her with a thirty-two-year-old teacher.

After unsuccessfully invoking available state administrative proceedings, Berg filed the present district court suit against Bruce and the School District. She alleged that her termination violated the Age Discrimination Act, § 1983 of Title 42, and the Minnesota Government Data Practices Act, Minn. Stat. Ann. ch. 13, and involved defamation, tortious interference with contract, and negligent and intentional infliction of emotional distress.

The district court granted the defendants' motion for summary judgment and dismissed the complaint. In a detailed opinion, the court discussed and rejected each of Berg's claims, ruling that she had not produced sufficient evidence to support any of them. With respect to the Age Discrimination Act claim, the court explained that "[Berg] submitted a number of affidavits from fellow teachers, and parents. These statements contain numerous conclusory statements and statements made without personal knowledge. What is lacking in the affidavits are specific facts, made with person [sic] knowledge that would support plaintiff's contention that defendants discriminate against older teachers." The court further stated that "[p]laintiff fails to meet the ultimate burden of presenting evidence that raises a genuine issue of material fact as to pretext."

II.

In her appeal to this court, Berg repeats the arguments under both federal and state law that she made in the district court. That court fully considered and properly rejected

4

her state law claims, and those claims do not warrant discussion here. Accordingly, we shall address only Berg's arguments under the Age Discrimination Act and § 1983. We affirm the district court's summary judgment dismissing her state law claims on the basis of the opinion of that court.

## III.

A. In considering Berg's claims under the Age Discrimination Act, we apply the standards and provisions governing "the proper order and nature of proof" that the Supreme Court enunciated for employment discrimination cases under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq., in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and refined in Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981). Rothmeier v. Inv. Advisers, Inc., 85 F.3d 1328, 1332 n. 5 (8th Cir. 1996) ("Although McDonnell Douglas is a Title VII case, the framework it establishes applies with equal force to claims under the ADEA").

Under this analysis the plaintiff has the initial burden of establishing a prima facie case of discrimination, which "creates a presumption that the employer unlawfully discriminated against the employee." Burdine, 450 U.S. at 254. The burden of production then shifts to the employer to rebut the presumption by producing evidence showing a legitimate non-discriminatory reason for its action. Id. at 253. If the defendant carries this burden, the burden shifts back to the plaintiff to show that the employer's proffered reason is merely a pretext for discrimination. Id. The plaintiff retains the burden of persuasion at all times and accordingly the plaintiff must present sufficient evidence to persuade the trier of fact that the adverse employment action was motivated by intentional discrimination. Id.

To establish a prima facie case of age discrimination under McDonnell Douglas, a plaintiff must prove that (1) he was in the age group protected by the Age Discrimination

5

Act (40 or older, 29 U.S.C. 631); (2) at the time of his discharge or demotion he was performing his job at a level that met his employer's legitimate expectations; (3) adverse employment action occurred; and (4) following his discharge or demotion, plaintiff was replaced by someone with comparable qualifications. See Hutson v. McDonnell Douglas, 63 F.3d 771, 776 (8th Cir. 1995) (quoting Bashara v. Black Hills Corp., 26 F.3d 820, 823 (8th Cir. 1994); see also O'Connor v. Consolidated Coin Caterers Corp., -- U.S.--, 116 S. Ct. 1307, 1309-1310 (1996) (outlining elements of prima facie case for claims of race discrimination and age discrimination).

The district court correctly held that Berg had established a prima facie case of age discrimination. As the court stated:

> Plaintiff is a member of a protected class (she was 49 at the time of discharge), there appears to be no dispute that she was qualified for the job of third grade teacher, and was discharged from that job. Although plaintiff does not address it in her memorandum, presumably ISD 601 sought to hire another teacher for the following school year with the qualifications similar to plaintiff's.

The burden then shifted to the defendants to show a legitimate non-discriminatory reason for terminating Berg. The defendants carried that burden by showing that Berg's termination was justified by her insubordination and unprofessional behavior. As the district court stated: "The evidence is undisputed plaintiff refused to attend or speak at meetings, refused to address matters outlined in the Notice Of Deficiency, and failed to notify her employer prior to missing school or leaving early. There is also evidence that plaintiff made threats against Bruce."

The burden then shifted back to Berg to show that the defendants' assertion that she was terminated for cause was a pretext to cover age discrimination. To defeat the motion for summary judgment, Berg was required to "set forth specific facts showing that

6

there is a genuine material issue [regarding age discrimination] that requires a trial."  Roxas v. Presentation College, 90 F.3d 310, 315 (8th Cir. 1996).  As the district court correctly held, Berg "does not point to any evidence from which to infer that her age played a part in the events that lead to this suit" and that "no evidence has been presented that raises a genuine issue of material fact as to the existence of age animus of the part of Bruce."

To support her contention that Bruce and the School District engaged in a pattern and practice of age discrimination, Berg submitted affidavits by former teachers containing general statements, but no detailed facts, about alleged age discrimination.  The affiants sometimes referred to alleged incidents of which they had no personal knowledge.  Berg also alleges, but again without giving detailed facts, that younger teachers were treated better than she was.  Finally, Berg points out that seven to ten teachers took early retirement in 1993.  She failed to show, however, that these retirements resulted from anti-age animus by Bruce or the School District.

Berg's failure to present any specific factual evidence showing age-based animus by Bruce or the School Board also is fatal to her claim that this case should be analyzed as a mixed motives case under Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), in which "an employment decision [i]s `the product of a mixture of legitimate and illegitimate motives.'" Radabaugh v. Zip Feed Mills, Inc., 997 F.2d 444, 448 (8th Cir. 1993) (quoting Price Waterhouse, 490 U.S. at 247).

As the district court stated at the end of its discussion of the age discrimination claim:

> Granting all factual inferences in favor of plaintiff, plaintiff's evidence does not raise genuine issues of material fact with regard to age discrimination.  Defendants presented evidence sufficient to establish plaintiff was terminated for legitimate

7

reasons. Plaintiff fails to meet the ultimate burden of presenting evidence that raises a genuine issue of material fact as to pretext. Likewise, in terms of a mixed motives case, plaintiff fails to raise a genuine issue that age was a motivating factor in her termination.

B. The district court's determination that the School District terminated Berg for cause and not because of anti-age animus also is dispositive of Berg's alternative claim under the Age Discrimination Act that she was terminated in retaliation for the exercise of her rights under that Act. She invoked 29 U.S.C. § 623(d), which prohibits an employer from discriminating against an employee because the employee "has opposed any practice made unlawful by this section, or . . . has made a charge, . . . assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter." According to Berg, she was discharged in retaliation for her letters to the school superintendent complaining about Bruce's treatment of her and consulting with the union about the matter.

To present a prima facie case of retaliation under the Act, Berg must show that "[s]he engaged in conduct protected under the ADEA; (2) [s]he was subjected to an adverse employment action [by defendants] at the time of, or after, the protected conduct occurred; and (3) there was a causal link between the protected activity and the adverse employment action." Wentz v. Maryland Cas. Co., 869 F.2d 1153, 1154-55 (8th Cir. 1989); see O'Bryan v. KTIV Television, 64 F.3d 1188, 1193 (8th Cir. 1995). Assuming that subsection (d) covers the activity upon which Berg relies, she has failed to show the necessary "causal link" between that activity and her discharge. Berg offers no proof to "undermine the overwhelming evidence" offered by the School District and Bruce which led to the district court's determination that she was terminated for insubordination and professional misconduct. Cf. Schweiss v. Chrysler Motors Corp., 987 F.2d 548, 550 (8th Cir. 1993) (awarding summary judgment to employer on retaliatory discharge claim when employee failed to present evidence undermining employer's proffered reason for the discharge).

8

IV.

Berg contends that Bruce and the School Board violated 42 U.S.C. § 1983, which prohibits conduct under color of state law that deprives any person of "any rights, privileges, or immunities" secured by the United States Constitution. See, e.g., Adickes v. S. H. Kress & Co., 398 U.S. 144, 150 (1970). She alleges that the defendants violated her First Amendment rights to academic freedom, to petition the government for redress of grievances, and to remain silent.

The district court correctly granted summary judgment rejecting these claims because, once again, Berg failed to present facts showing any violation of her constitutional rights.

A. Berg argues that her "right to academic freedom" was improperly burdened when Bruce, upset over a grade his son received, scrutinized Berg's teaching and grading practices. She asserts that the First Amendment constitutionally protected her right to assign grades as she saw fit, without interference from Bruce. Academic freedom is designed to "protect the individual professor's classroom method from the arbitrary interference of university officials." Parate v. Isibor, 868 F.2d 821, 830 (6th Cir. 1989).

As the principal and Berg's supervisor, Bruce properly was concerned after learning that numerous parents objected to their children being assigned to Berg's class. His subsequent classroom visits and review of Berg's teaching methods and grading practices was not arbitrary, but was appropriate action to insure that one of his teachers was properly performing her duties. Since there is no evidence that Bruce ordered or attempted to get Berg to change any particular grade, including that of his son, we need not consider whether the First Amendment gave Berg the right to assign grades as she saw fit. Compare Parate (First Amendment protects right to assign grades) with Lovelace v. Southeastern Mass. Univ., 793 F.2d 419, 425-426 (1st Cir. 1986) (no such protection).

9

See also <u>Keen v. Penson</u>, 970 F.2d 252, 257-258 (7th Cir. 1992) (expressing neither approval or disapproval of <u>Parate</u> but allowing a professor to be disciplined for unprofessional conduct including his refusal to change a grade).

B. Berg claims that she was sanctioned for exercising her right to petition the government for redress of grievances. The basis of her claim is unclear. If Berg contends that she was prevented from exercising her right to petition, the short answer is that she did petition. The staff attorney from the Massachusetts Education Association submitted an affidavit that he represented Berg in various grievances.

If, alternatively, Berg claims that the School District retaliated against her for the filing of her grievances by terminating her and thereby impermissibly burdened her First Amendment right to petition, her claim fails because she has not established the causal connection between her discharge and the protected conduct. As we explained in rejecting Berg's retaliatory discharge claim under the Age Discrimination Act, Berg was properly terminated for insubordination and unprofessional conduct.

C. Berg contends that the defendants violated her alleged constitutional right to remain silent when they treated her refusal to discuss with Bruce her performance problems, or even to talk to him, as insubordination and professional misconduct. She asserts that she was only following her union's instruction not to discuss grievance- related issues with Bruce or other school district officials unless a union representative or her lawyer was present. Berg, however, had no First Amendment right to refuse to talk to those officials at all about her classroom performance, grading and attitude. The First Amendment did not authorize Berg to be totally uncooperative, disrupt classes or obstruct discipline. See <u>Connick v. Myers</u>, 461 U.S. 138, 154 (1983) ("The limited First Amendment interest involved here [employee's right to speak about office policies] does not require that [the employer] tolerate action which he reasonably believed would disrupt the office, undermine his authority, and destroy close working relationships."). The district court

10

correctly granted summary judgment rejecting this claim.

CONCLUSION

The judgment of the district court granting summary judgment dismissing the complaint is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT

11