# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 98-2864

_____

| | |
|---|---|
| Jacqueline Stanback, | * |
| | * |
| Appellant, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * Eastern District of Arkansas |
| Best Diversified Products, Inc., | * |
| et al., | * |
| | * |
| Appellees. | * |

_____

Submitted: March 12, 1999
Filed: May 10, 1999

_____

Before RICHARD S. ARNOLD and HANSEN, Circuit Judges, and PERRY,[1] District Judge.

_____

PERRY, District Judge

Jacqueline Stanback appeals from orders of the district court granting Best Diversified Products, Inc.'s ("Best") motion for summary judgment on her claims that Best discriminated against her on the basis of both her race and her disability, in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), and the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA").

---

[1]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri, sitting by designation.

Stanback also argues that the district court abused its discretion in (1) granting Best's motion for a protective order, thereby precluding her from completing the deposition of a witness, and (2) excluding from the record her proffer of supplemental affidavits from two witnesses which purportedly support her allegations that Best maintained discriminatory policies and practices. We affirm the orders of the district court[2] in all respects.

I.     **Background**

On our de novo review of the grant of summary judgment, we view the facts in the light most favorable to Stanback, the non-moving party. Gorman v. Bartch, 152 F.3d 907, 909 (8th Cir. 1998). Stanback, an African-American woman, commenced work on a permanent basis in Best's Gravity Assembly Department on or about September 25, 1992. Best has an attendance policy under which an employee is assessed points for instances of unauthorized absenteeism or tardiness. For example, an employee who is absent for more than four hours, but properly reports that absence, is assessed one point, while an employee who is merely tardy is penalized one-half point. An employee who is assessed ten or more points during her previous twelve months of employment is subject to termination.

On or about April 7, 1994, Stanback sustained a work-related injury; as a result she was absent from work for approximately five and one-half months.[3] Stanback

---

[2]The Honorable Garrett Thomas Eisele, United States District Judge for the Eastern District of Arkansas.

[3]The nature of Stanback's injuries is unclear from the record. However, the record does contain a copy of a May 18, 1996, decision rendered by an Administrative Law Judge ("ALJ") of the Social Security Administration on claims for disability insurance and supplemental security income benefits that Stanback filed on June 6, and October 6, 1994, respectively. In his decision awarding those benefits, the ALJ wrote, "The record does establish that the claimant has the following medically determinable impairment(s): back injury and residuals, back pain and radicular pain in the right hip,

returned to work on October 3, 1994, but was absent on October 4, 1994. DeWitt H. Pendergrass, then the company's risk manager, terminated Stanback on October 5, 1994, after receiving a sheet showing that Stanback had accumulated ten and one-half points over the previous seventeen months.[4]

On July 16, 1996, Stanback filed a complaint in the United States District Court for the Eastern District of Arkansas against Best and three Best managers, alleging violations of Title VII and the ADA.[5] Stanback charged that her termination was race-based, and that Best followed a practice of treating white employees better than similarly situated African American employees. Stanback also alleged that Best failed to reasonably accommodate her disability.

On January 30, 1997, the district court entered the first of several scheduling orders. The court set a discovery deadline of April 14, 1997, a motion filing deadline of April 28, 1997, and a trial date of June 9, 1997. On April 14, 1997, the court entered another scheduling order providing that a discovery and status report would be due on July 28, 1997, that any motions would be filed by August 11, 1997, and that trial would commence on September 22, 1997.

Stanback moved for an extension of the discovery deadline on July 28, 1997, which the district court granted by order entered August 11, 1997. By the terms of that order, the deadline for completing discovery and filing pre-trial motions was extended through August 28, 1997. On that date Best and the other defendants filed a motion for summary judgment on all counts contained in Stanback's complaint. In

---

leg and foot."

[4]The sheet stated that a seventeen month period was used because Stanback "did not have 12 months of continuous activity."

[5]Stanback also brought a claim under the Equal Pay Act, 29 U.S.C. § 206(d), but later abandoned it.

their memorandum in support of that motion, the individual defendants argued (correctly) that neither Title VII nor the ADA authorizes the imposition of liability on employees. With respect to the Title VII claim, the defendants attached to their motion an affidavit from Pendergrass in which he attested that Stanback's termination was solely the result of her violation of Best's attendance policy. As for the ADA claim, the defendants contended that Stanback was not disabled within the statute's meaning. Alternatively, they argued that Stanback's violation of its attendance policy constituted a legitimate, non-discriminatory reason for her termination.

On September 5, 1997, Stanback moved to continue the September 22, 1997, trial date, which the district court granted on September 17, 1997. On October 20, 1997, the court entered a third scheduling order, changing the trial date to February 17, 1998, setting a discovery deadline of December 23, 1997, and establishing a new motion filing deadline of January 6, 1998.

On November 13, 1997, seventy-seven days after the defendants filed their summary judgment motion, Stanback filed her response thereto. In that response, Stanback argued that the motion was "premature and untenable" because discovery was not yet completed. Stanback related her belief that the yet-to-be completed deposition of defendant Peggy Finley, Stanback's supervisor at Best, would provide facts "crucial" to her case. Stanback further stated, "Plaintiff has made inquiry as to the availability of Ms. Finley but has not been given a definite answer from Defendants."

On March 27, 1998, the district court entered an order granting the defendants' motion for summary judgment on all of Stanback's claims against the individual defendants. In addition, the court granted summary judgment in favor of Best on all of Stanback's claims against it, with the exception of the ADA claim. As to that last claim only, the court directed Stanback to promptly complete Finley's deposition, and to supplement the record thereafter with any evidence obtained from that deposition which might be relevant to her ADA claim.

On April 14, 1998, Best's counsel wrote a letter to the district judge (which counsel copied to Stanback's attorney) seeking to prevent Stanback from reconvening Finley's deposition. Counsel explained that Stanback had begun that deposition on August 1, 1997, but had been unable to complete it on that day, because Finley "was unable to continue." Attaching a supporting letter from Finley's doctor, counsel stated that Finley was suffering from a seizure disorder and "neurocardiogenic syncope," which, according to the doctor, might cause her "to lose consciousness rapidly under certain types of stimulation."

On April 29, 1998, the court ordered the April 14, letter from Best's counsel to be docketed as a motion for a protective order. Noting that the letter indicated that it was copied to Stanback's counsel, the court directed Stanback to file a response. The court further observed that it had "received no word" from Stanback since the entry of its March 27, order directing her to promptly supplement the record. Indicating that it was inclined to rule on Stanback's ADA claim on the record then before it, the court stated, "At this point, plaintiff's failure to act in accordance with the Court's March 27 Order leads the Court to believe that plaintiff may have nothing to add to the record."

On May 14, 1998, Stanback finally filed a response to the motion for protective order. Arguing that Finley was the only person with personal knowledge of the calculation of Stanback's absenteeism points, Stanback charged that Best did not want Finley to testify because her testimony would "reveal the discriminatory conduct and pretextual nature of [Best's] absentee policy." Stanback asked that the court direct that Finley be examined by an independent physician. Stanback also asked that she be allowed to supplement the record with the affidavits of Lucille Birdsong and Mary Henderson, two Best employees, who, according to Stanback, would speak to "the issue of others (white employees) being allowed to work in the office after returning to work with an injury and disability." Stanback filed no other brief with respect to her ADA claim. On June 3, 1998, the district court entered a memorandum opinion granting Best's motion for summary judgment on Stanback's ADA claim, and setting

forth the reasons for its March 27, 1998, ruling on her other claims. The court also granted Best's motion for protective order and denied Stanback's request to supplement the record with the two affidavits.

## II.     Discussion

We review a district court's grant of summary judgment de novo. Gutridge v. Clure, 153 F.3d 898, 900 (8th Cir. 1998), petition for cert. filed, 67 U.S.L.W. 358 (U.S. Mar. 11, 1999) (No. 98-1459). We will affirm that grant if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

### A.     Stanback's ADA Claim

The Americans with Disabilities Act prohibits an employer from discriminating against a "qualified individual with a disability" by reason of that disability. 42 U.S.C. § 12112(a). A "qualified individual with a disability" is a person "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that [he or she] holds or desires." 42 U.S.C. § 12111(8).

In analyzing discriminatory discharge cases brought under the ADA, we apply the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). See, e.g., Nesser v. Trans World Airlines, 160 F.3d 442, 445 (8th Cir. 1998); Wilking v. County of Ramsey, 153 F.3d 869, 872 (8th Cir. 1998). That framework requires that a plaintiff first establish a prima facie case by showing (1) that she is disabled within the meaning of the ADA, (2) that she is qualified to perform the essential functions of the job in question with or without reasonable accommodation, and (3) that she was terminated "'under circumstances from which an inference of unlawful discrimination arises.'" Cody v. Cigna Healthcare, 139 F.3d 595, 599 (8th Cir. 1998) (quoting Price v. S-B Power Tool, 75 F.3d 362, 365 (8th Cir.), cert.

denied, 519 U.S. 910 (1996)); Webb v. Mercy Hosp., 102 F.3d 958, 959-60 (8th Cir. 1996). If the plaintiff establishes a prima facie case, the burden shifts to the defendant employer to come forth with a legitimate, nondiscriminatory reason for the plaintiff's discharge. Nesser, 160 F.3d at 445; Christopher v. Adam's Mark Hotels, 137 F.3d 1069, 1072 (8th Cir.), cert. denied, 119 S. Ct. 62 (1998). If the employer meets that burden of production, then the plaintiff must show that the employer's proffered reason is pretextual, and that discrimination "was the real reason" behind the discharge decision.[6] Nesser, 160 F.3d at 445; Young v. Warner-Jenkinson Co., 152 F.3d 1018, 1021 (8th Cir. 1998).

In granting summary judgment in favor of Best, the district court assumed that Stanback was disabled within the meaning of the ADA,[7] but found that she failed to produce any "specific" evidence rebutting Best's contention that she was terminated for

---

[6]If Stanback were actually making a reasonable accommodation claim, the applicability of McDonnell Douglas might be debatable. See Mole v. Buckhorn Rubber Prods., Inc., 165 F.3d 1212, 1219 (8th Cir. 1999) (dissenting opinion arguing that a reasonable accommodation claim is not amenable to the McDonnell Douglas method of analysis) (Lay, J., dissenting). However, although Stanback initially characterized her claim as one concerning Best's alleged failure to reasonably accommodate her disability, it is, in fact, a discriminatory discharge case -- as the facts show and as Stanback acknowledged in her brief on appeal. Thus, we think the district court's use of the McDonnell Douglas framework was proper.

[7]In his May 18, 1996, decision awarding disability insurance benefits to Stanback, the ALJ determined that Stanback's "significant" physical limitations compromised her capacity for exertion "to the extent that she is unable to engage in a full range of even sedentary work on the sustained basis necessary to perform substantial gainful activity." "[P]rior representations of total disability carry sufficient weight to grant summary judgment against the [ADA] plaintiff' absent 'strong countervailing evidence that the employee is in fact qualified.'" Moore v. Payless Shoe Source, Inc., 139 F.3d 1210, 1213 (8th Cir. 1998) (quoting Dush v. Appleton Elec. Co., 124 F.3d 957, 963 (8th Cir. 1997)), petition for cert. filed, (U.S. July 20, 1998) (No. 98-5286); see Downs v. Hawkeye Health Servs., Inc., 148 F.3d 948, 951 (8th Cir. 1998) . Best chose not to raise this issue on appeal or before the district court.

violating its attendance policy. Thus, in the district court's view, Stanback utterly failed to show that Best's stated reason for firing her was pretextual, much less that discrimination was the real reason for her dismissal. For reversal, Stanback argues that a material fact dispute remains as to whether Best's absenteeism calculation was pretextual. She contends that she accumulated only seven absenteeism points during the relevant time period, and that she did not have a current written version of the company's attendance policy in her employee handbook.

We conclude that summary judgment on Stanback's ADA claim was properly granted. Although Stanback testified that she never received a copy of Best's attendance policy, she acknowledged being told at the time of her hire that Best operated on a "ten point system." She further indicated that at some time prior to her termination, Best informed her and its other employees that it would henceforth be calculating an employee's absenteeism points based upon his or her past twelve months of employment, rather than on a calendar year basis as it had previously done. With respect to Stanback's statement at her deposition that she had accumulated only seven points during the relevant time period, we agree with the district court that Stanback failed to "come forward with specific evidence to refute the detailed schedule submitted by Best," or to "call[] into question any specific points assessed or days missed." June 3, 1998, Memorandum Opinion at 6. We have stated on more than one occasion that "general statements in affidavits and deposition testimony . . . are insufficient to withstand a properly-supported motion for summary judgment." Helfter v. United Parcel Serv., Inc., 115 F.3d 613, 616 (8th Cir. 1997); see Berg v. Bruce, 112 F.3d 322, 327 (8th Cir. 1997) (affirming grant of summary judgment in favor of defendant on plaintiff's age discrimination claim where, in opposing defendant's motion, plaintiff submitted affidavits by other teachers "containing general statements, but no detailed facts," and alleged, "again without giving detailed facts," that younger teachers were treated better than she was). Stanback's lone statement that her absenteeism points were wrongly calculated is insufficient here. This is not a situation where extrinsic proof might be hard to come by. At a minimum, Stanback could have identified the

days that she believed Best wrongly included in its calculation and could have provided her own sworn testimony that she worked those days. Of course, she might also have buttressed that testimony with a timecard, a pay stub, or a co-worker's testimony that she (Stanback) was on the job on a day that Best counted her absent. Stanback did none of these things, but simply stated that she believed she had fewer points.

More importantly, Stanback did not offer any evidence suggesting that Best enforced its attendance policy in a discriminatory manner. She did not argue, for example, that Best routinely retained other employees who violated that policy, or that it used some different method in calculating her points. Thus, she not only failed to create a factual dispute as to pretext, she also failed to offer any evidence from which a reasonable trier of fact could infer that discrimination was the true reason for her termination. See Wilking v. County of Ramsey, 153 F.3d 869 (8th Cir. 1998).

## B. Stanback's Title VII Claim

As Stanback's Title VII claim, like her ADA claim, is based on circumstantial evidence, the Court analyzes it using the McDonnell Douglas framework. See, e.g., Chock v. Northwest Airlines, Inc., 113 F.3d 861, 863 (8th Cir. 1997). Using that same mode of analysis, the district court found that Stanback had not satisfied the third prong necessary to make out a prima facie case of race discrimination. Citing the affidavit submitted by Kay Best, Best's vice-president of finance and administration, the court rejected Stanback's claims that two white employees who, like Stanback, returned to work after suffering work-related injuries were treated better than she was. In that affidavit, Ms. Best attested that Stanback's situation "was handled exactly the same as those involving [the two white employees]. All three were allowed the necessary time off and were allowed to work within the restrictions imposed by their respective physicians." The court further held that even if Stanback had established a prima facie case, summary judgment would still be warranted because she did not offer any evidence to overcome the legitimate, nondiscriminatory reason that Best gave for its

termination decision. On appeal, Stanback argues that the district court erred in relying on the affidavits submitted by Best because those affidavits came from persons "with little or no direct personal knowledge of how Stanback's absences were calculated, how Stanback worked her job, and what accommodations were actually made for her vis-a-vis accommodations made for white female employees."

As best we can discern, Stanback's Title VII claim consists of two discrete allegations of disparate treatment: (1) Best's alleged failure upon her return to work to offer accommodations similar to those it made for two white employees, and (2) Best's termination of her for violating its attendance policy. With respect to the latter allegation, summary judgment was certainly appropriate. Stanback did not adduce any evidence that Best penalized her more harshly for her record of absenteeism than it did any white employee with a similarly poor record. Nor did Stanback show that Best used a different (and stricter) method in calculating her attendance points as compared to the method it used for tallying the points of its white employees.

Stanback's disparate treatment claim concerning Best's alleged failure to offer her workplace accommodations similar to those it offered white employees also fails. Title VII, of course, prohibits an employer not only from discharging an employee because of her race but also from treating her differently (again, by reason of her race) with respect to the "terms, conditions, or privileges" of her employment. See 42 U.S.C. § 2000e-2(a)(1). A plaintiff may prove such disparate treatment by showing that she was treated less favorably than similarly situated employees who are not in the plaintiff's protected class. See Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 259-60 (8th Cir. 1996); Johnson v. Legal Servs. of Arkansas, Inc., 813 F.2d 893, 896 (8th Cir. 1987). In this case, Stanback's disparate treatment claim cannot succeed because she did not produce "specific, tangible evidence" showing a disparity in the treatment of similarly situated employees. See Rose-Maston v. NME Hosps., Inc., 133 F.3d 1104, 1109 n.4 (8th Cir. 1998). Stanback offered nothing to show that the injuries suffered by Judy Bivens and Lucille Birdsong, the two white employees whose experiences she cited,

were comparable in kind or severity to the injuries that she endured. Indeed, Stanback testified that the medical problem suffered by Birdsong was related to her bladder, and that Bivens had trouble with "the upper parts" of her back. As mentioned above, Stanback's health problems relate to her back, right hip, right leg, and right foot. Stanback also did not show that her supervisor was also the supervisor of either Bivens or Birdsong. "When different decision-makers are involved, two decisions are rarely similarly situated in all relevant respects." Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972 (8th Cir. 1994) (internal quotation marks omitted). The district court properly granted summary judgment to Best on Stanback's Title VII claim.

### C. Stanback's Discovery-Related Claims

In analyzing whether a claim is ripe for summary judgment, a district court has discretion to determine whether the parties have had adequate time for discovery, and that determination is reviewed for abuse of discretion. See National Bank of Commerce v. Dow Chem. Co., 165 F.3d 602, 606 (8th Cir. 1999) (finding no abuse of discretion where district court denied further discovery and ruled on summary judgment after more than a year of discovery had been completed). Although discovery does not have to be completed before a court can grant summary judgment, summary judgment is proper only after the nonmovant has had adequate time to engage in discovery. See In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig., 113 F.3d 1484, 1489-90 (8th Cir. 1997).

The district court in this case found "no basis" for concluding that the representations of Best's counsel concerning Finley's health were not true, noting the provision of Rule 11 which states that an attorney (or an unrepresented party) who presents "a pleading, written motion, or other paper" to a court thereby represents that the allegations and other factual contentions contained therein have evidentiary support. See Fed. R. Civ. P. 11(b)(3). The court further noted that Stanback's efforts to resume Finley's deposition appeared to have been "limited at best," June 3, 1998,

Memorandum Opinion at 10, and that Stanback's assertions regarding Finley's potential testimony seemed "nebulous." Id. With respect to the affidavits of Lucille Birdsong and Mary Henderson that Stanback sought to submit, the district court denied the request, stating, "At best these proffered statements appear to relate to different treatment based upon race, a claim which the Court has already dismissed." Id.

Stanback argues that the district court abused its discretion in granting Best's motion for a protective order, thereby preventing her from resuming Finley's deposition. Stanback claims that Finley's testimony would have been critical to both her Title VII and her ADA claims, because Finley had "more direct personal knowledge of relevant material facts that any . . . witness other than Stanback herself." With respect to the affidavits of Birdsong and Henderson, Stanback contends that the district court abused its discretion in refusing the affidavits, "especially since discovery was still open."

The district court clearly did not abuse its discretion with respect to the discovery-related issues in this case. A party opposing summary judgment who believes that she has not had an adequate opportunity to conduct discovery must seek relief pursuant to Federal Rule of Civil Procedure 56(f), which requires the filing of an affidavit with the trial court showing "what specific facts further discovery might unveil." Dulany v. Carnahan, 132 F.3d 1234, 1238 (8th Cir. 1997). Where a party fails to carry her burden under Rule 56(f), "postponement of a ruling on a motion for summary judgment is unjustified." Humphreys v. Roche Biomedical Labs., Inc., 990 F.2d 1078, 1081 (8th Cir. 1993). Stanback never filed a Rule 56(f) affidavit in this case, and her contention that Finley would "reveal the discriminatory conduct and pretextual nature of [Best's] absentee policy" is sheer speculation (as is her unsupported charge that Best misled the trial court about the seriousness of Finley's condition). More than six hundred days passed between July 16, 1996, the day that Stanback filed her complaint, and March 27, 1998, the day that the district court granted summary judgment in favor of Best on her Title VII claim. During those six hundred plus days, the discovery deadline was extended multiple times. Although Stanback brought the

Finley deposition issue to the court's attention in her November 13, 1997, response to Best's summary judgment motion (which Best had filed more than two months earlier), she did not seek relief from the court either at that time or in the months thereafter leading up to the court's March 27, 1998, decision.

Stanback's argument with regard to the two affidavits that she sought to submit to the district court on May 14, 1998, fails because she did not include copies of those documents in the record on appeal. We therefore have no basis for questioning the district court's finding that the affidavits appeared to pertain to Stanback's Title VII claim, which the court had dismissed over a month before. See Kinkead v. Southwestern Bell Corp. Sickness & Accident Disability Benefit Plan, 111 F.3d 67, 69 (8th Cir. 1997) (concluding that appellant failed to preserve issue on appeal by not including copy of relevant pleading in the record). We add that Stanback offered no explanation to the district court as to why she was unable to provide those documents earlier.

## III.    Conclusion

For the foregoing reasons, the district court's judgment is AFFIRMED.
RICHARD S. ARNOLD, Circuit Judge, concurring in the judgment.

I agree that the judgment should be affirmed, and I also concur in almost all of the Court's opinion. One point causes me to write separately. It has to do with the burden-shifting process under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The Court, ante at 7, makes the following statement.

> If the employer meets [the] burden of production, then the plaintiff must show that the employer's proffered reason is pretextual, and that discrimination "was the real reason" behind the discharge decision.

> I cannot agree to this formulation. In my view, once the plaintiff has introduced

evidence which, if believed, would justify a rational jury in finding that the reason given by the employer was not the real reason, the plaintiff will always (with an exception not here relevant) be able to survive summary judgment, or to get her case to the jury, as the case may be. In other words, evidence of pretext would, in and of itself, justify the ultimate finding, which the trier of fact must always make, that discrimination was the real reason behind the discharge decision.

The Court en banc so held in Ryther v. KARE 11, 108 F.3d 832 (8th Cir. 1997) (en banc), as I read that opinion. Since Ryther, panels of this Court have gone both ways on the issue. Compare, e.g., Brandt v. Shop 'n Save Warehouse Foods, Inc., 108 F.3d 935 (8th Cir. 1997), with, e.g., Maschka v. Genuine Parts Co., 122 F.3d 566 (8th Cir. 1997).

In the present case, the difference is theoretical only and would not affect the result, because the plaintiff did not introduce any substantial evidence of pretext. On this understanding, I concur in the judgment.

HANSEN, Circuit Judge, concurring.

I concur wholly in the court's opinion. I write separately only to express my respectful disagreement with my brother Arnold's reading of Ryther v. KARE 11, 108 F.3d 832 (8th Cir.) (en banc), cert. denied, 117 S. Ct. 2510 (1997), as expressed in his concurring opinion in the instant case. As I read his concurrence, he believes Ryther held that once a plaintiff introduces credible evidence of pretext, that is "evidence which, if believed, would justify a rational jury in finding that the reason given by the employer was not the real reason," ante at 14, the plaintiff will necessarily avoid summary judgment and get to the jury.

I read Ryther differently. In Ryther, eight of the then active judges of the court (including me) joined in Part I.A of Judge Loken's dissenting and concurring opinion which rejected the argument that evidence of pretext is enough to defeat an employer's

summary judgment motion. See Ryther, 108 F.3d at 848 n.13. Judge Fagg, Judge Beam, and I penned a separate concurrence in Ryther, stating that "an employment discrimination plaintiff must present evidence sufficient to create a reasonable inference of discriminatory intent to avoid judgment as a matter of law," Ryther, 108 F.3d at 847, or in the context of the instant case, summary judgment. Consequently, it remains my view that in order to avoid summary judgment, the plaintiff must have evidence which shows not only the employer's stated non-discriminatory reason for the adverse employment action to be pretextual, but the plaintiff's evidence must also be such as to permit the fact finder to find by reasonable inference that the real reason for the action was unlawful discrimination. The pretext shown must be a pretext for discrimination. See McCullough v. Real Foods, Inc., 140 F.3d 1123, 1128 (8th Cir. 1998) ("As the Supreme Court clarified in Hicks, 'nothing in law would permit us to substitute for the required finding that the employer's action was the product of unlawful discrimination, the much different (and much lesser) finding that the employer's explanation of its action [is] not believable.' 509 U.S. [502,] 514-15 [(1993)]."); Rivers-Frison v. Southeast Mo. Community Treatment Ctr., 133 F.3d 616, 621 (8th Cir.1998) ("Of course, evidence that the Center's proffered reasons for termination were pretextual will only defeat summary judgment if the evidence could persuade a reasonable fact-finder that Rivers-Frison was discharged because of intentional race discrimination.").

I also respectfully note that my brother Arnold's view that "evidence of pretext would, in and of itself, justify the ultimate finding . . . that discrimination was the real reason behind the discharge," ante at 14, is, in my view, directly contrary to our holding in Ryther that evidence of pretext, standing alone, will not make a submissible case unless it is consistent with a reasonable inference of discrimination. See Ryther, 108 F.3d at 837; see also Lynn v. Deaconess Med. Ctr.-West Campus, 160 F.3d 484, 489 (8th Cir. 1998) ("Nevertheless, evidence of pretext, standing alone,

does not invariably preclude summary judgment.").

A true copy.

Attest:

           CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT