**MHC INVESTMENT COMPANY,**
**Plaintiff,**

v.

**RACOM CORPORATION, Defendant,**

v.

**Ronald W. Stepien, Dennis H. Melstad,**
**and David Sokol, Third-party**
**Defendants.**

**No. 4–01–CV–90708.**

United States District Court,
S.D. Iowa,
Central Division.

July 26, 2002.

Mark McCormick, Des Moines, IA, for plaintiff.

Kevin H. Collins, Nancy J. Pinner, Cedar Rapids, IA, for defendant.

## MEMORANDUM OPINION AND ORDER

PRATT, District Judge.

Plaintiff, MHC Investment Company ("MHC"), filed this action for judgment on a series of agreements between itself and Defendant Racom Corporation ("Racom"). Racom has pled affirmative defenses of fraudulent inducement, lack of authority on the part of Racom's board of directors to enter the agreement, and lack of consideration. Racom has also brought counterclaims against MHC and the individual third-party defendants for fraud, civil RICO, slander per se, and breach of fiduciary duty. Plaintiff MHC moved for summary judgment on its original claim and, along with the third-party defendants, moved for summary judgment on Racom's counterclaims. Racom resisted and also moved to extend summary judgment proceedings pursuant to Rule 56(f) of the Federal Rules of Civil Procedure. On April 2, 2002, the Court denied Racom's motion to extend and on April 11, 2002 denied a motion to reconsider. On June 19, this Court granted MHC's motions for summary judgment on both its claims and Racom's counterclaims. This Court also ordered Racom's attorneys to show cause why their pleadings did not violate Rule 11. A hearing was held on July 18, 2002 and the Court now finds that Racom's attorneys, from the firm of Shuttlesworth & Ingersoll, did violate Rule 11 by pursuing frivolous defenses and claims in this Court.

Of the five attorneys who testified at the hearing, four were from Shuttlesworth & Ingersoll: Kevin Collins, the partner responsible for the case; Sarah Gayer, the associate who drafted the resistances to MHC's summary judgment motions; Caroll Reasoner, a partner with the firm specializing in corporate law who consulted with Mr. Collins and Ms. Gayer regarding the case; and Bob Houghton, whose testimony was exclusively devoted to the prestige of Shuttlesworth & Ingersoll and the accomplishments of the three aforementioned attorneys. The fifth attorney to testify, H. Richard "Dick" Smith, is from a different firm, and testified in order

to provide the Court the benefit of his own legal judgment on the matter.

All of the Shuttlesworth & Ingersoll attorneys testified regarding their impressive academic credentials and their accomplishments within the profession. Mr. Collins, Ms. Reasoner, and Ms. Gayer, the attorneys responsible for the case, went on to assert that they believed in the merits of their claims but were denied the opportunity to take discovery.

## I. Discovery

Before briefly revisiting the substance of Racom's case that was addressed at the hearing, or the lack thereof, the Court believes it is necessary to revisit, for a third time, the issue of the Racom attorneys' request for further discovery in this case, and the responsibility of the Court's denial of this request for the Racom attorneys' deeply flawed resistance briefs to MHC's motions for summary judgment. First, the Court notes that attorneys for Racom, albeit not from Shuttlesworth & Ingersoll, conducted extensive depositions of at least four former and present MHC officials, after MHC moved for summary judgment in this case, in connection with a separate but related litigation in Delaware between MHC and Racom. Two of the individuals deposed were the MHC representatives on the Racom board accused of breaching their fiduciary duties. In addition, MHC produced over 2500 pages of documents in those cases, including what appears from the depositions of Mr. Melstead and Mr. Stepien to be internal e-mails and memoranda.

Second, the Racom attorneys chose to resist MHC's first motion for summary judgment without moving to stay or extend summary judgment proceedings. Thus the Racom attorneys advanced affirmative defenses of fraud, lack of consideration, and lack of authority without requesting any further discovery to substantiate their resistance. Nevertheless, the Racom attorneys claim that despite their willingness to advance a fraudulent inducement defense with the evidence they already possessed six months ago, they were inhibited by their inability to take further discovery on their fraud counterclaim.

The Racom attorneys insist that they needed to take further discovery, as a method for substantiating their counterclaims and not as a tactic to delay the payment of a minimum of $10 million that they owed MHC.[1] Yet the manner in which they pursued this discovery belies their claim. MHC filed its lawsuit in federal court on December 12, 2001 and did not move for summary judgment on Racom's counterclaims until March 8, 2002. Yet in that four month period, Racom never propounded any written discovery. The evidence that the Racom attorneys already possessed did not lead to a single document request, the noticing of a 30(b)(6) deposition on particular topics, or the noticing of depositions of any particular witnesses.

When Racom's attorneys did move to extend or stay the summary judgment proceedings on the counterclaims on March 18, they provided an affidavit from Mr. Collins that simply stated that they would like to propound written discovery and take depositions of Mr. Melstead, Mr. Stepien, and Mr. Sokol. As noted above, Racom's attorneys had already taken extensive depositions of Mr. Stepien and Mr. Melstead. The Court also noted this in its order denying the Racom attorneys' motion and noted that it had read these deposition transcripts in their entirety.

■ More importantly, in that order the Court explained what the law of the Eighth Circuit required the Racom attorneys must show in order to extend summary judgment proceedings. It bears repeating. Rule 56(f) requires a party seeking additional time for discovery to submit an affidavit identifying what further discovery is needed. *See Stanback v. Best Diversified Prod., Inc.,* 180 F.3d 903, 911 (8th Cir.1999). "A party opposing summary judgment who believes that she has not had an adequate opportunity to conduct discovery must seek relief pursuant to Fed-

---

1. Ms. Reasoner acknowledged during her testimony that under any theory of defense to Racom's agreement with MHC, Racom was obligat-

ed to return the $10 million they received from MHC and never repaid.

eral Rule of Civil Procedure 56(f), which requires the filing of an affidavit with the trial court showing *'what specific facts further discovery might unveil.'* *Id.* (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1238 (8th Cir.1997) (emphasis added)). In order to qualify for the protection afforded by Fed. R.Civ.P. 56(f), a party must not only articulate what additional discovery is necessary, they must also demonstrate how it will enable them to defeat the motion for summary judgment. *Allen v. Bridgestone/Firestone, Inc.,* 81 F.3d 793, 797–98 (8th Cir.1996). Despite access to copious MHC records and depositions of MHC officials, Racom's attorneys did not advance a single category of documents that they would seek in further discovery, they did not propose a single line of questioning that was unasked in previous depositions, nor a single theory of what they believed they would find in further discovery.

With the benefit of the Court's initial order outlining the deficiency of the Racom attorneys' motion to extend summary judgment proceedings, Racom moved for reconsideration of the Court's denial. Remarkably, the Racom attorneys did not add in any way to the information they provided the Court in the original motion that was denied. The Racom attorneys resisted the original summary judgment motion on similar theories without requesting further discovery, they failed to propound any discovery requests during the initial four months of the case, and they could not outline with any specificity what discovery was necessary. All of these factors seriously undermine the Racom attorneys' claim that their counterclaims would not have appeared so frivolous had the Court ignored Eighth Circuit law and allowed discovery to go forward.

## II. Racom's Claims

At the hearing, the Racom attorneys did not volunteer much testimony on the substantive grounds for why they believed there was a factual or legal basis for the claims and defenses they asserted; however, the Court did have an opportunity to query them on some, particularly their fraud defense, their fraud counterclaim, and their lack of consideration defense. The Court had less time to

explore other claims; however, their lack of sufficiency was thoroughly covered in the summary judgment order.

### A. Fraudulent Inducement & Fraud

MHC's attorney asked Mr. Collins if he "ought to have been in a position without regard to discovery to identify what it claimed constituted a misrepresentation, isn't that accurate?" To which Mr. Collins responded, "yes, and I believe we did." The Court also asked Mr. Collins about the fraud claims, specifically asking him to cite a specific misrepresentation. Mr. Collins responded by stating that MHC misrepresented their "intentions with respect to this investment and the ongoing business relationship with Racom."

Mr. Collins' associate, Sarah Gayer, when faced with the same question, gave a slightly different, but more extensive, explanation of the Racom attorneys' theory, stating that the fraud in this case was in fact a fraudulent concealment of material information, as opposed to an affirmative misrepresentation. When asked what the concealment was, Ms. Gayer responded:

> Our client has told us from the beginning that its his opinion that MHC entered into this transaction with our company with the intent to defraud him and take over the company. He and we questioned their motives with respect to the stock purchase agreement, with respect to the common stock agreement, the restructuring agreement, where they set aside rights that they had to dividends and required us to promise higher interest rates, additional dividends, common stock, building towers in places we otherwise would not have, really building or changing our business to form their needs. So, to try to answer your question more succinctly, its our position they concealed to us their true motives with respect to their investment in the company.

It would seem this explanation is rather circular: MHC committed fraud by concealing their intent to commit fraud.

Nevertheless, the Court is willing to step back one last time and examine the theory of the Racom attorneys that the "secret plot"

that they allege is sufficient basis for their claims in this case. If the Court were to overlook the law requiring that those alleging fraud must do so with particularity, and were to assume that the Racom attorneys had presented evidence to support their theory about MHC's concealment of their fraudulent intentions and true motives, what exactly would that theory be?

From what the Court is able to gather from the pleadings and testimony of the Racom attorneys, MHC gave Racom $10 million, with the intention of placing two representatives on a board of seven and proceeding to negotiate a series of transactions with Racom that benefitted MHC exclusively while driving Racom into financial ruin. MHC's "plan," at least as it was ultimately executed, involved using someone other than their own representatives on the board to negotiate these arms-length transactions with Racom's controlling shareholder, Gregg Miller, and garner the unanimous approval of the super-majority of the Racom board that did not represent MHC (the "Independent Directors"). During this time, MHC would forego receiving any return on its original $10 million investment over the course of five years, instead accepting marginally higher dividend rates and small amounts of common stock in the hope that Mr. Miller and the rest of the Independent Directors would accede to MHC's proposals to bankrupt the company and thus enable MHC to take control. Of course, since Racom has never alleged a single fact that was concealed or misrepresented in these proposals, the Court must therefore assume that MHC, in executing their "secret plan," was relying solely on the Independent Directors and Mr. Miller's willingness to agree to ideas that would bankrupt their company, even though they had sufficient information to know better. Hence, MHC's "plan" depended on Gregg Miller and the Independent Directors' incompetence, but not their trust.

Now that the Court has a theory of the "fraud," it must ask whether concealing the intent to negotiate a series of transactions as advantageous to oneself as possible, without any further misrepresentations or conceal-

ment, and without regard to the welfare of the transaction partner, constitutes fraud. If so, fraud would encompass more transactions than the Court could possibly adjudicate.

 Even if this theory of "fraud" was satisfactory, it would decimate the rule that plaintiffs plead fraud claims with particularity. Fed.R.Civ.P. 9(b). Under Rule 9(b) of the Federal Rules of Civil Procedure, a Plaintiff must plead fraud with particularity in their complaint and cannot simply make conclusory allegations. See *Commercial Prop. Invs., Inc. v. Quality Inns Int'l*, 61 F.3d 639, 644 (8th Cir.1995). The district court may hold a party to the same standard in deciding whether to issue summary judgment. *Murr Plumbing, Inc. v. Scherer Bros. Fin. Serv. Co.*, 48 F.3d 1066 (8th Cir.1995); *see also Schaller Telephone Co. v. Golden Sky Systems, Inc.*, 139 F.Supp.2d 1071, 1098 n. 9 (N.D.Iowa 2001). To determine whether the claim was pled properly, the Court must look at the following circumstances: the time, place, and contents of the alleged fraud; the identity of the person allegedly committing fraud; and what was given up or obtained by the alleged fraud. *Commercial Prop. Invs.* at 644 (citing *Bennett v. Berg*, 685 F.2d 1053, 1062 (8th Cir.1982)). If this Court accepted the Racom attorneys' theory of the fraud in this case, what precisely did Racom give up? It is clear what they got, the use of $10 million over the course of five years without having to provide any return on the investment during that period. Racom did not give up its independence to MHC in the initial bargain, MHC was only granted two representatives on a board of seven. To gain control of Racom's operations, MHC did not have to depend on any misrepresentations at any specific time or place by any specific person, MHC merely had to hope that Gregg Miller and the Independent Directors would agree to making foolish, but informed, decisions over the course of five years.

Even if the Racom attorneys' story constituted fraud and met the requirement for specificity in alleging fraud, their decision to pursue this allegation as an affirmative defense and a counterclaim suffered from another fatal flaw: they possessed no evidence

of it. When presented with this inconvenient problem at the hearing, the Court was sent directly back into the feedback loop. Despite the fact that the Racom attorneys pursued the fraudulent inducement defense without requesting further discovery, and despite Mr. Collins claim that further discovery was unnecessary to establish his claims that a misrepresentation occurred, both Mr. Collins and Ms. Gayer ultimately referred back to their inability to take discovery when pressed on the inadequacy of the fraud claim. Yet their theory of fraud was not sufficiently adequate to survive a motion to dismiss. Thus, it certainly did not merit extended discovery without any identification of what they were seeking to discover.

## B. Lack of Consideration

Another claim that was discussed at the hearing was the affirmative defense of lack of consideration. Both Ms. Reasoner and Ms. Gayer explained to the Court that it was MHC's idea to forebear on the dividend payments that were owed to them under the original agreement. The Racom attorneys then reason that since MHC offered to forebear these payments, they did not really want the money, and therefore MHC's forebearance of the dividend payments there were owed were not consideration that supported the bargain.

Black's Law Dictionary gives the following definition of "consideration":

> The inducement to a contract. The cause, motive, price, or impelling influence which induces a contracting party to enter into a contract. The reason or material cause of a contract. The interest, profit or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility, given, suffered, or undertaken by the other... It is a basic, necessary element for the existence of a valid contract that is legally binding on the parties.

Black's Law Dictionary (citing Restatement, Second, Contracts, SS 17(1), 71). The Iowa Supreme Court adopts the definition of "consideration" used in the Iowa Civil Jury instructions: " 'Consideration' is either a benefit given or to be given to the person who makes the promise [or some other person] or a detriment experienced or to be experienced by the person to whom the promise is made [or some other person]. Where the contract provides for mutual promises, each promise is a consideration for the other promise." *Federal Land Bank of Omaha v. Woods,* 480 N.W.2d 61, 65 (Iowa 1992) (citing Iowa Civil Jury Instructions 2400.4 (1986)).

Ms. Reasoner seems to argue that because MHC allegedly offered to defer the significant payment of money that was owed to them, the timely receipt of that payment was of no value to them, and thus not a sufficient "detriment" to constitute consideration. If it were true that by offering something, an offeror implied that what they were offering was of no value to them and therefore not a detriment, then most agreements would fail for lack consideration. Even if there were a plausible argument that the deferral of MHC's dividend payments was not a detriment to MHC, the Court would have trouble believing that temporary relief from the obligation to pay hundreds of thousands of dollars was of no value to Racom. Since the definition of consideration is disjunctive, a detriment to one or a benefit to the other, the benefit that Racom reaped by avoiding the payment of dividends that were due constitutes sufficient consideration.

## III. Rule 11 Sanctions

The Advisory Committee Notes to the Federal Rules of Civil Procedure state that Rule 11 "continues to require litigants to 'stop-and-think' before initially making legal or factual contentions. It also, however, emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable ..." Fed.R.Civ.P. 11 *advisory committee notes.* In this case, the Racom attorneys pressed their defenses and counterclaims long after they had sufficient information to understand that they were unsupportable. The Advisory Committee Notes further state that the Court "is expected to avoid using the wisdom of hindsight, and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted." *Id.* The Court finds from its hearing on this

matter that the Racom attorneys should have known at the time they filed their papers with the Court, and probably did know, that their claims and defenses were unsupported by fact and law.

It is this Court's firm belief that the Racom attorneys, by persisting in claims and defenses that were unsupported in law or fact, violated Rule 11(b)(2), which requires that attorneys certify in papers submitted to the Court that "the claims, defenses, and other legal contentions therein are warranted by existing law ..." [2] Fed.R.Civ.P. 11(b)(2). The Court also finds that MHC's belief that Racom's counterclaims and defenses were urged for the purposes of delay is correct, and thus Racom's attorneys also violated Rule 11(b)(1), stating that attorneys must certify that papers submitted to the Court are "not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed.R.Civ.P. 11(b)(1).

The Advisory Committee Notes also suggest the following criteria a district court should consider in its decision of whether to impose sanctions and what sanctions to impose:

> Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case, what amount is needed to deter similar activity by other litigants ...

Fed.R.Civ.P. 11 *advisory committee notes.* First, the Court will look to some of these factors with respect to its decision about whether to impose sanctions, and then will look to others in assessing what sanctions the Court should enact.

### A. Whether to Sanction.

The Racom attorneys spent considerable time at the hearing highlighting their very impressive credentials. The Court surmises that they intended this aspect of their testimony to demonstrate that if lawyers with credentials such as theirs could find these claims and defenses nonfrivolous, the Court should accept their assessment. If the recent scandals in corporate America and the nation's securities markets have taught us anything, they have taught us that the professional assertions of those with the highest credentials do not necessarily imply that those assertions have merit. When a highly credentialed person puts forward a frivolous, if complex, claim before the Court, regardless of how eloquently they do so, the Court is still responsible for assessing the merits of that claim and treating it accordingly. Similarly, the complexity with which the Racom attorneys were able to describe Racom's transactions with MHC does not excuse this Court from the difficult work of examining those claims and determining whether there is any merit beneath the complicated arguments justifying them. This Court found none, nor does it believe that the Racom attorneys are fooled by the complexity of their own arguments. Thus, the Court believes the violations of the Racom attorneys were willful, not negligent. The Court also finds that the Racom attorneys' superior training in the law only exacerbates the seriousness of this infraction and the likelihood that it was willful.

Moreover, while the Court only discussed the counterclaim of fraud and the defenses of fraudulent inducement and lack of consideration in this order, it is clear from the Court's summary judgment order that none of the claims or defenses advanced by the Racom attorneys had any merit, thus their behavior "infected the entire pleading." Furthermore, the behavior was not a single incident, as this order and previous orders demonstrate, the Racom attorneys estab-

---

**2.** The remainder of the provision is "or nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Fed.R.Civ.P. 11(b)(2). The Court finds no place in the Racom attorneys' papers where this part of the rule applies.

lished a pattern of persisting in these claims over the course of two separate resistances to summary judgment motions, as well as two separate attempts to extend those proceedings without offering valid reasons to do so. Thus, this Court finds that the Racom attorneys did establish a pattern of behavior aimed at protracting the length of these proceedings in order to delay their client's liability for over $15 million. Furthermore, they were successful in doing so until this Court's summary judgment on June 19, 2002.

## B. The Appropriate Sanctions

Rule 11(c)(2) states that sanctions "shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed. R.Civ.P. 11(c)(2). The Eighth Circuit has "forcefully suggested that trial courts consider which sanction 'constitutes the least severe sanction that will adequately deter the undesirable conduct ...'" *Kirk Capital Corp. v. Bailey,* 16 F.3d 1485, 1490 (8th Cir.1994) (quoting *Pope v. Federal Express,* 974 F.2d 982, 984 (8th Cir.1992)). On the other hand, the Eighth Circuit has also stated that "the district court has *discretion* to impose non-monetary sanctions, but it is not required to do so." *Kirk Capital* at 1490 (emphasis in original). Nevertheless, the Court has considered the non-monetary sanctions suggested in the Advisory Committee Notes: "striking the offending paper; issuing an admonition, reprimand, or censure; requiring participation in seminars or other educational programs ... [or] referring the matter to disciplinary authorities ..." Fed.R.Civ.P. 11 *advisory committee notes.* It is unhelpful and too late to strike the offending papers. The Court finds an admonition, reprimand or censure insufficient. The Court believes a disciplinary referral is inappropriate. Finally, in light of the credentials of the Racom attorneys, the Court finds that requiring them to attend additional continuing legal education would not be helpful.

The Court therefore believes that monetary sanctions are the only appropriate measure in this case. In addition to the great deal of time the Court was required to spend on the papers of the Racom attorneys, MHC has represented that they spent $32,418 countering the claims and defenses of the Racom attorneys. Moreover, the Racom attorneys have enabled their client to delay liability for over $15 million under its contract with MHC. Unfortunately, because the Court initiated the Rule 11 proceeding, and not MHC, the Court is not able to direct monetary sanctions toward MHC in order to remedy their expenditure of attorney fees.[3] The Advisory Committee Notes clearly state that "[t]he revision provides that a monetary sanction imposed after a court-initiated show cause order be limited to a penalty payable to the court and that it be imposed only if the show cause order is issued." *Id.*

In any case, the Eighth Circuit clearly states in *Kirk Capital Corp.* that "the primary purpose of Rule 11 sanctions is to deter attorney and litigant misconduct, not to compensate the opposing party for all of its costs in defending." *Kirk Capital* at 1490. In this case, the Court must consider what would deter future litigants from persisting in frivolous claims in order to delay a rather large judgment. Given the sheer size of the judgment in a case of this type, the Court could not possibly levy a sanction large enough to deter such behavior in the parties themselves; however, the Court believes that a sanction that outweighs the fees that an attorney might receive to wage such claims might accomplish this goal. Moreover, the Court expects that a person facing the loss of their business will seek the counsel of their attorney and ask the attorney to do whatever they can to forestall the undesirable result. On the other hand, attorneys are responsible for limiting their advocacy to that permissible under Rule 11, as well as to avoid the creation of unnecessary litigation costs to the parties and the Court. As the Eighth Circuit noted in *Kirk Capital,* "[t]his [is] an issue of law that the law firm, not the lay client, was called upon to make." *Kirk Capital* at 1492.

In *Kirk Capital,* the Eighth Circuit adopted the conclusion of the lower court

---

**3.** A decision from this Court is pending on prejudgment interest owed to MHC that would remedy the delay in Racom's payment of what it owes under the summary judgment.

that three-fourths of fees and expenses was an appropriate sanction. In this case, that amounts to approximately $25,000. The Court recognizes that this amount is considered a rather large sanction in this jurisdiction; however, the Court also recognizes that the actions of the Racom attorneys cost MHC over $32,000 in legal fees and forestalled the payment of $15 million for over six months. While the Rule 11 sanction is not intended to compensate MHC, and cannot because the Court initiated this proceeding, the Court believes $25,000 is appropriate in light of these costs that the Racom attorneys forced MHC to incur. Moreover, the Court finds that given the large amounts of money involved, a $25,000 sanction is the minimum amount a Court can award in order to deter law firms from accepting fees in order to wage frivolous claims and defenses in order to delay the payment of large debts. While the Court does not have before it the fees paid to Shuttlesworth & Ingersoll, it is reasonable to assume their fees were similar to those paid to MHC's law firm and that $25,000 will sufficiently reduce the benefit of those fees such that this behavior is deterred in the future.

## IV. Order

The Court orders that Shuttlesworth & Ingersoll pay the Court $25,000 as monetary sanction for their violation of Rule 11(b)(1) and (2) of the Federal Rules of Civil Procedure. The Court further prohibits Shuttlesworth & Ingersoll from passing this sanction on to its client, Racom.

IT IS SO ORDERED.