DONG VAN NGUYEN, Plaintiff,

v.

DOBBS INTERNATIONAL
SERVICES, INC.,
Defendant.

No. 99–0079–CV–W–9–BB.

United States District Court,
W.D. Missouri,
Western Division.

March 10, 2000.

Henry M. Stoever, Kansas City, MO, for Plaintiff.

James R. Ward, Lawrence M. Berkowitz, Berkowitz, Feldmiller, Stanton, Brandt, Williams & Stueve, LLP, Kansas City, MO, Louis P. Britt, III, Ford & Harrison, LLP, Memphis, TN, for Defendant.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MAUGHMER, United States Magistrate Judge.

Plaintiff Dong Van Nguyen brings this action against defendant Dobbs International Services, Inc. (Dobbs), under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e, *et seq.*, 42 U.S.C. § 1981, and Missouri law. In Counts I and II, plaintiff alleges that defendant violated Title VII and § 1981 by discriminating against plaintiff, subjecting plaintiff to a hostile work environment, and constructively discharging plaintiff based on his race and/or national origin. In Count III, plaintiff alleges that defendant assaulted plaintiff by shouting and throwing objects at plaintiff. In Count IV, plaintiff alleges that defendant committed battery by forcing plaintiff to "work like a slave," resulting in substantial bodily harm.

Defendant moves for summary judgment on all counts.

## I.

### SUMMARY JUDGMENT STANDARD

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, it is the court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Reed v. ULS Corp.*, 178 F.3d 988, 990 (8th Cir.1999).

If there is no genuine issue about any material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. *Smith v. Marcantonio*, 910 F.2d 500, 502–03 (8th Cir.1990); *Roberts v. Browning*, 610 F.2d 528, 531 (8th Cir.1979). The summary judgment procedure is not a "disfavored procedural shortcut." Rather, it is "an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 2553.

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the absence of genuine issues of material fact. However, the moving party *is not required* to support its motion with affidavits or other similar materials *negating* the opponent's claim. *Id.* (emphasis added).

The nonmoving party then must go beyond the pleadings and by affidavits, depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* A party opposing a properly supported motion for summary judgment cannot simply rest on allegations and denials in his pleading to get to a jury without any significant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmov-

ing party." *Id.* The evidence favoring the nonmoving party must be more than "merely colorable." *Id.* at 2511. When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted).

The inquiry to be made mirrors the standard for a directed verdict: whether the evidence presented by the party with the onus of proof is sufficient that a jury could properly proceed to return a verdict for that party. *Anderson,* 106 S.Ct. at 2511. Essentially, the question in ruling on a motion for summary judgment and on a motion for directed verdict is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Id.* at 2512.

## II.

## FACTS

Based on the parties' pleadings, deposition testimony, answers to interrogatories, and admissions, the following facts are undisputed, or, if disputed and plaintiff properly presented facts supporting his version of the disputed facts, these facts are presented in the light most favorable to plaintiff.

Plaintiff Dong Van Nguyen is Vietnamese–American. Dobbs, which provides catering services to airlines, hired Nguyen as a dishwasher in 1986 at its Kansas City International Airport (KCI) facility.

Nguyen quit after two weeks, but subsequently reapplied and was hired to perform utility duties in March of 1988. In October of 1988, Nguyen was promoted to the position of driver.

The International Association of Machinists (Union) represents Dobbs' hourly employees in Kansas City. Dobbs and the Union negotiated a collective bargaining agreement (CBA) governing the terms and conditions of employment at Dobbs.

The CBA provides that work assignments and overtime are determined based on seniority. Therefore, senior employees choose their shifts, day off assignments, and whether to accept overtime, while junior employees are forced to work the remaining shifts and assignments and cover overtime not accepted by senior employees.

The work of loading and unloading food onto airplanes is carried out through teams of two employees, a driver and a loader. Bob Litras, Dobbs' exterior manager, schedules a team's workload based on employee seniority bids, the number of teams available, and the number of airplanes arriving and departing per day.

During his employment, Nguyen was at or near the bottom of the seniority scheme at Dobbs. In fact, Nguyen was the least senior driver until Dennis McMurray was hired in July of 1996.

Nguyen's team was consistently forced to work heavier, longer loads than other teams. As a result, Nguyen often worked long hours, overtime, and on his scheduled days off. Jennifer Finnell, Nguyen's team partner for most of 1996, states that she and Nguyen sometimes worked 15–16 hours consecutively, even though the CBA provides that employees cannot be required to work more than 13 consecutive hours absent an emergency.

Further, Nguyen contends that his supervisors and co-workers made various disparaging comments concerning Nguyen's race. For example, Mary Mango, a co-worker, overheard Litras refer to Nguyen as that "damn chink." Pete Mesh, Nguyen's direct supervisor, regularly referred to Nguyen as "Ding Dong" or "Long Dong Silver," and Ron Muller, Dobbs' general manager, often asked Nguyen whether he could speak or read English.

However, in September of 1996, Mesh commended Nguyen for avoiding a delay

when Nguyen's truck broke down en route to a delivery and Nguyen ran a mile to phone for backup. The bottom of Mesh's commendation letter stated: "This is a perfect example of 'Great' 'People' doing 'Great Work'—We all owe these people our thanks." Nguyen was named employee of the month in both November of 1995 and October of 1996.

During the summer of 1996, Nguyen complained to Mesh, Litras, Muller, and Marie Guy, Nguyen's union steward, about being required to work excessive overtime. Muller threatened to fire Nguyen.

Dobbs' attendance records show that, from May through December of 1996, Nguyen worked an average of 47.87 hours per week. Guy, who was a driver and part-time supervisor senior to Nguyen, worked 53.06 hours per week. Dennis McMurray, another driver, averaged 48.23 hours per week. Both Guy and McMurray are white.

Although Nguyen contends that he once worked 30 consecutive days in late 1996, the employee attendance records show that Nguyen worked only two consecutive weeks without a day off. However, during this time, McMurray and Tony Caudle, another driver, were injured and unable to work. Numerous other employees, both Caucasian and African–American, were also required to work for extended periods of time without time off.

In late December of 1996, Nguyen hurt his elbow and arm and informed Litras that the injury was work-related. Litras responded that, if the injury was job-related, Nguyen would have to consult the company doctor. Nguyen completed an accident report which stated that he had been in pain for an extended period of time.

Nguyen first visited his family physician, Dr. Leurding, who released Nguyen to return to work on January 6, 1997. Nguyen then consulted Dr. Hall, the company doctor, who diagnosed Nguyen with right lateral epicondylitis and left medial epicondylitis. Dr. Hall provided medication and instructed Nguyen to avoid aggravating his injury, but Nguyen was released to return to work.

Nguyen subsequently presented Muller with a note from his personal physician excusing Nguyen from work until January 14, 1997. Muller informed Nguyen that the excuse was not valid because Dr. Hall had released Nguyen. Nguyen contends that Muller tore up the excuse and threw it in Nguyen's face. Co-worker John O'Brien claims that Muller later stated that "Dong is Asian and that (injuries) happens to older Asians." Muller is considered "abusive" by many of Dobbs' employees, often screaming at employees, slamming the phone in their presence, throwing food at them, and kicking garbage cans.

Dobbs scheduled another appointment for Nguyen with Dr. Hall. Dr. Hall diagnosed a positive rheumatoid arthritis factor, which he concluded was non-work-related. Nguyen then requested, and was granted, a medical leave of absence until March 12, 1997. Because Dr. Hall determined that Nguyen's injuries were not work-related, Nguyen was not paid during his leave.

On March 12, 1997, Nguyen was released to perform light-duty work limited to lifting no more than ten pounds. Nguyen faxed Dobbs the doctor's note on March 13. Dobbs did not respond to Nguyen's fax. Dobbs did not allow Nguyen to return because there were no light-duty assignments available for drivers, a position that requires substantial lifting, bending, and pushing. Further, the CBA provides that employees restricted to light-duty may not be reassigned to another department. However, Nguyen claims that Tony Caudle, a non-Asian driver, was permitted to perform light-duty work in December of 1996.

On April 11, 1997, Nguyen faxed Dobbs his notice of resignation. A subsequent medical evaluation concluded that Nguyen had suffered 25% permanent-partial disability.

## III.

**NGUYEN HAS NOT PRESENTED FACTS SUFFICIENT TO ESTABLISH A DISCRIMINATION CLAIM UNDER TITLE VII OR 42 U.S.C. § 1981.**

■ Title VII and 42 U.S.C. § 1981 prohibit Dobbs from discriminating against Nguyen on the basis of his race or national origin. *See* 42 U.S.C. § 2000e–2(a)(1); 42 U.S.C. § 1981(a)(b). Discrimination claims based on race and national origin are assessed in the same manner, *see Ghane v. West*, 148 F.3d 979, 981 n. 2 (8th Cir.1998), and, absent direct evidence of discrimination, are analyzed using the three-part burden-shifting framework set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). *See Roxas v. Presentation College,* 90 F.3d 310, 315 (8th Cir.1996).

■ Nguyen must first present facts sufficient to establish a prima facie case of intentional discrimination by showing that 1) he is a member of a protected class; 2) he was qualified for the position at issue; 3) he suffered adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of intentional discrimination. *See Ruby v. Springfield R–12 Pub. Sch. Dist.*, 76 F.3d 909, 911 (8th Cir.1996); *Elliott v. Montgomery Ward & Co.*, 967 F.2d 1258, 1260 (8th Cir.1992).

If Nguyen properly presents facts sufficient to establish a prima facie case, Dobbs must rebut the presumption of discrimination by articulating a legitimate, non-discriminatory reason for its actions toward Nguyen. *McDonnell Douglas*, 93 S.Ct. at 1824; *Price v. S–B Power Tool*, 75 F.3d 362, 365 (8th Cir.1996).

If Dobbs articulates a legitimate, non-discriminatory reason, Nguyen must then establish that Dobbs' proffered reason is "mere pretext" for discrimination. *McDonnell Douglas*, 93 S.Ct. at 1825; *Price*, 75 F.3d at 365. Nguyen "at all times carries the burden of persuasion to show that [Dobbs' action] was motivated by intentional discrimination." *McDonnell Douglas*, 93 S.Ct. at 1825.

### A. *Nguyen's Claim That Dobbs Discriminated Against Nguyen by Forcing Him to Work Harder Than Non–Asian Employees*

As to Nguyen's claim that he was forced to work harder than non-Asian employees, Dobbs argues 1) Nguyen did not suffer adverse employment action; 2) Nguyen cannot show that he was treated less favorably than similarly situated employees outside his protected class; and 3) Nguyen has failed to show that Dobbs' stated reasons for its actions are pretextual.

■ Assuming Nguyen can show that his hours and working conditions changed in a manner that constitutes adverse employment action, which is doubtful, Nguyen must also present facts sufficient to establish a causal connection between his race and Dobbs' action, thereby creating an inference of intentional discrimination. To make this showing, Nguyen must demonstrate that similarly situated non-Asian employees were treated more favorably than Nguyen. *See Stanback v. Best Diversified Prods., Inc.*, 180 F.3d 903, 910 (8th Cir.1999); *Barge v. Anheuser–Busch*, 87 F.3d 256, 258–59 (8th Cir.1996).

Dobbs has produced attendance records showing that other employees, both Caucasian and African–American, many with greater seniority, worked as much or more than Nguyen. *See* Def's Ex. E. Further, the records establish that non-Asian employees worked for weeks, even months, with little or no time off, *see* Muller Dec., Ex. 3, and that Nguyen was required to work no more than two weeks without a day off. *Id.*

In opposing summary judgment, Nguyen has presented no facts demonstrating that he was treated less favorably than similarly situated non-Asian employees with comparable seniority. Rather, Nguyen speculates that the records were fabri-

cated and asserts that he once worked 30 consecutive days without a day off. Even if this claim is true, the record shows that Nguyen's hours and working conditions were comparable to employees with *greater* seniority.

Nguyen also provides declaration from various former co-workers who state that Nguyen was forced to work harder than non-Asian employees. However, these conclusory assertions, unsupported by specific facts, are not sufficient to demonstrate that Nguyen was treated less favorably than similarly-situated employees at Dobbs. Therefore, Nguyen cannot establish a prima facie case that Dobbs discriminated against Nguyen by forcing him to work harder, longer hours than non-Asian employees.

■ Even if Nguyen has presented facts sufficient to establish a prima facie case, Dobbs has articulated legitimate, non-discriminatory reasons for Nguyen's work schedule. The CBA dictates that seniority governs an employee's hours, assignments, and overtime requirements, and Nguyen was among the least senior drivers during his employment at Dobbs. Further, when Nguyen's hours allegedly increased during November and December of 1996, two other drivers were unable to work due to injuries.

Because Dobbs has articulated legitimate, nondiscriminatory reasons for its actions, Nguyen has the burden of presenting facts sufficient to show that Dobbs' stated explanation is pretextual by demonstrating both that Dobbs' proffered reasons are false and that intentional discrimination was the real reason for Nguyen's allegedly burdensome work schedule. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 2752 n. 6, 125 L.Ed.2d 407 (1993). Because Nguyen has presented no direct evidence of discrimination, the critical issue is whether Nguyen has presented facts showing that Dobbs' proffered reasons are so " 'unworthy of credence' to permit a trier of fact to find that a discriminatory ... reason motivated" Dobbs. *Harvey v. Anheuser–Busch, Inc.,* 38 F.3d 968, 971 (8th Cir.1994) (citing *St. Mary's,* 113 S.Ct. at 2749).

■ In opposing summary judgment, Nguyen presents little, if any, evidence of pretext. Rather than addressing the veracity of Dobbs' proffered explanation, Nguyen relies on his own conclusion and those of former co-workers that Dobbs was motivated by discriminatory animus. Illustrative is the declaration of Patricia Mullen, in which she states: "The above treatment and abuses were inflicted upon Dong Nguyen was [sic] because Dong Nguyen is from a foreign country." Pl's Ex. 9. Again, these conclusory assertions, largely unsupported by specific facts and lacking adequate foundation, are not sufficient to create a genuine issue of material fact concerning the veracity of Dobbs' stated reasons or its true motivations. *See Raddatz v. Standard Register Co.,* 31 F.Supp.2d 1155, 1159 (D.Minn.1999).

■ Nguyen also argues that he has satisfied his burden of establishing pretext by showing that his supervisors and co-workers ridiculed his name and made racially derogatory comments. For instance, Nguyen alleges that Muller asked Nguyen if he could read English, that Mesh called Nguyen "Ding Dong" and "Long Dong Silver," and that Litras once referred to Nguyen as "that damn chink." These comments, if true, are highly inappropriate. However, "stray remarks" unconnected to the process by which Nguyen's hours and job assignments were controlled are insufficient to create a genuine dispute of material fact concerning Dobbs' motivation for Nguyen's work schedule. *See Simmons v. Oce–USA, Inc.,* 174 F.3d 913, 916 (8th Cir.1999); *Ghane v. West,* 148 F.3d 979, 982 (8th Cir.1998); *Gartman v. Gencorp, Inc.,* 120 F.3d 127, 131 (8th Cir. 1997).

Nguyen challenges Dobbs' assertion that the seniority system dictated Nguyen's work schedule by arguing that "while there was a union, the union was worthless." Pl's Opp., at 13. Nguyen also

claims that the 13–hour consecutive work rule was frequently violated.

However, Nguyen does not challenge Dobbs' assertion that Nguyen was one of its least senior drivers, and Nguyen has presented no facts indicating that Dobbs did not follow seniority in creating its employees' schedules. Further, Nguyen does not attempt to controvert Dobbs' statement that Nguyen was forced to work harder in late 1996 because he had to cover for two injured drivers.

Viewing the record as a whole and in the light most favorable to the plaintiff, Nguyen has not presented facts sufficient to allow a reasonable jury to disbelieve Dobbs' proffered reasons and find that Dobbs was motivated by intentional race discrimination. *See Rothmeier v. Investment Advisers, Inc.*, 85 F.3d 1328, 1335 (8th Cir.1996). Therefore, because Nguyen cannot establish a prima facie case or pretext, Dobbs' Motion for Summary Judgment will be granted as to Nguyen's claim that Dobbs discriminated against Nguyen by forcing him to work harder than non-Asian employees.

### B. *Nguyen's Claim That Dobbs Discriminated Against Nguyen By Failing to Pay Him During His Medical Leave of Absence*

■ As to Nguyen's claim that he was denied pay during his medical leave of absence based on his race, Dobbs states that it does not provide an employee with paid leave for non-work-related injuries. Therefore, because Dr. Hall determined that Nguyen's injuries were not job-related and had cleared Nguyen to return to work, Dobbs refused to pay Nguyen during his medical leave of absence.

Although Nguyen challenges Dr. Hall's conclusion and asserts that excessive work caused his injuries, Nguyen has presented no facts showing that Dobbs did not actually rely on Dr. Hall's diagnosis in denying Nguyen paid leave. Further, Nguyen has not shown that non-Asian employees were paid while on leave for non-work-related injuries or that Dr. Hall's diagnosis was based on discriminatory animus.

Nguyen asserts that Muller's alleged statement that "Dong is Asian and that (injuries) is what happens to older Asians" suffices to establish that Dobbs denied Nguyen paid leave based on his race. However, Nguyen has presented no facts establishing a connection between Muller's statement and Dr. Hall's diagnosis, which ultimately determined whether Nguyen would be paid during his medical leave. Therefore, Muller's comment is not sufficient to create a genuine issue for trial.

Viewing the facts presented in the light most favorable to the plaintiff, Nguyen has failed to produce facts sufficient to allow a reasonable jury to conclude that Dobbs' proffered reason for refusing to provide Nguyen with paid leave is "unworthy of credence" or that the real reason was discriminatory animus. Therefore, Dobbs' Motion for Summary Judgment will be granted as to Nguyen's claim that Dobbs discriminated against Nguyen by refusing to pay him during his medical leave of absence.

### C. *Nguyen's Claim That Dobbs Constructively Discharged Nguyen By Refusing to Assign Nguyen to Light–Duty Work Following His Return From Medical Leave*

■ As to this claim, Dobbs responds that there was no light-duty work available for drivers, a position requiring frequent lifting, in March of 1997 when Nguyen was released to return on restricted duty. Further, the CBA did not allow an employee to be transferred to another division to perform light-duty work.

In opposing summary judgment, Nguyen asserts that Tony Caudle, a non-Asian driver, was allowed to perform light-duty work when Caudle was injured in December of 1996. Although this fact may suffice to establish a prima facie case, it is insufficient, by itself, to establish pretext because Nguyen has presented no facts showing that light-duty work was available

for drivers in March of 1997 or that the availability of restricted work was similar in December of 1996. To the contrary, the record indicates that Dobbs was operating under a work shortage at the time Caudle was injured, lending credence to Dobbs' proffered explanation. Further, Nguyen does not challenge Dobbs' assertion that the driver position is not amenable to restricted duty.

Therefore, because Nguyen has not presented facts sufficient to permit a finding of pretext, Dobbs' Motion for Summary Judgment will be granted as to Nguyen's claim that Dobbs constructively discharged Nguyen by refusing to permit him to return to work on a restricted basis.

Accordingly, Dobbs' Motion for Summary Judgment will be granted as to Nguyen's discrimination claims in Counts I and II.

## IV.

## NGUYEN FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES ON HIS HOSTILE WORK ENVIRONMENT CLAIM

As to Nguyen's claim that Dobbs subjected Nguyen to a hostile work environment based on his race, Dobbs argues that Nguyen failed to exhaust his administrative remedies on this claim because Nguyen failed to allege facts supporting a hostile work environment claim in his EEOC charge. Nguyen responds that, although he did not use the words "hostile work environment," the allegations in his administrative charge are like or reasonably related to his hostile work environment claim.

Before filing a claim in federal court, a plaintiff must exhaust his administrative remedies by "1) timely fil[ing] a charge of discrimination with the EEOC setting forth the facts and nature of the charge, and 2) receiv[ing] notice of the right to sue." *Williams v. Little Rock Mun. Water Works,* 21 F.3d 218, 223 (8th Cir.1994) (citing 42 U.S.C. § 2000e–5(b), (c), (e)). A plaintiff exhausts administrative remedies for all allegations of discrim-ination "like or reasonably related to the substance of the charges" properly filed with the EEOC. *Artis v. Francis Howell North Band Booster Ass'n,* 161 F.3d 1178, 1183 (8th Cir.1998) (citing *Wallin v. Minnesota Dep't of Corrections,* 153 F.3d 681, 688 (8th Cir.1998)). The language of the EEOC complaint "must at least describe the facts and legal theory with sufficient clarity to notify the agency" and the defendant of the plaintiff's specific claim. *Ong v. Cleland,* 642 F.2d 316, 318 (8th Cir.1981) (quoting *Cooper v. Bell,* 628 F.2d 1208, 1211 (9th Cir.1980)); *see Philipp v. ANR Freight System, Inc.,* 61 F.3d 669, 676 (8th Cir.1995).

Because incidents of racial harassment are "distinct from and unrelated to" claims that an employer relied on impermissible factors in rendering employment decisions, the Eighth Circuit Court of Appeals has held that racial harassment claims are not like or reasonably related to allegations of discriminatory discharge. *Tart v. Hill Behan Lumber Co.,* 31 F.3d 668, 672–73 (8th Cir.1994). " '[I]t will not suffice to file general charges with the [administrative agency], as was done here, and then to expect that this allegation will permit all claims of race-based discrimination [including racial harassment] in a subsequent lawsuit.' " *Tart,* 31 F.3d at 673 (quoting *Rush v. McDonald's Corp.,* 966 F.2d 1104, 1112 (7th Cir.1992) (holding racial harassment claim not like or reasonably related to underlying discrimination claim)).

In his EEOC complaint, Nguyen asserted that "I have been treated more oppressively, with more burdens and more injuriously [sic] than non-Vietnamese *in that my work schedule is heavier than other employees.*" Pl's Ex. A (emphasis added). Nguyen also charged that he "was denied the opportunity to return while whites were given the opportunity to return to work on light duty." *Id.*

As demonstrated by his EEOC complaint, Nguyen's administrative charge focuses on Nguyen's claims that he was forced to work harder and denied other

employment privileges because of his race. Nguyen's EEOC complaint does not mention harassment, hostile work environment, or any facts supporting these claims, even though Nguyen was represented by counsel at the time his administrative charge was filed. Therefore, because the facts underlying Nguyen's hostile work environment claim were not fairly set forth in his administrative charge, Nguyen's hostile work environment claim will be dismissed for failure to exhaust his administrative remedies.

## V.

### NGUYEN'S INTENTIONAL TORT CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS AND THE EXCLUSIVITY PROVISION OF THE MISSOURI WORKER'S COMPENSATION STATUTE

As to Nguyen's assault and battery claims, Dobbs argues that 1) the statute of limitations bars Nguyen's tort claims; and 2) these claims are precluded by the exclusive remedy provision of the Missouri Worker's Compensation Statute, Mo.Rev. Stat. § 287.120.

The last alleged act of assault occurred on January 21, 1997, when Muller slammed the phone down and threw a doctor's note in Nguyen's face. The final alleged battery occurred on January 7, 1997, the last day Nguyen worked at Dobbs. Nguyen filed his Complaint on January 22, 1999. The statute of limitations applicable to Nguyen's tort claims is two years. *See* Mo.Rev.Stat. § 516.140.

Nguyen argues his tort claims are tolled upon his filing of a charge with the EEOC. However, Nguyen cites no authority, and I have found none, for the proposition that the statute of limitations on state tort claims is tolled by the filing of a federal administrative complaint alleging violations of federal anti-discrimination laws. Therefore, Nguyen's assault and battery claims are time-barred.

Further, Nguyen states that "[t]he issue of whether Plaintiff suffered a work related injury due to accidental reasons or for intentional reasons ... is left to the Missouri Labor and Industrial Relations Commission." Therefore, Nguyen apparently concedes that his tort claims are also barred by the exclusivity provision of the Missouri Worker's Compensation Statute, and Missouri law supports this apparent concession. *See Goodrum v. Asplundh Tree Expert Co.,* 824 S.W.2d 6, 12 (Mo.1992); *Killian v. J & J Installers, Inc.,* 802 S.W.2d 158, 159 (Mo.1991).

Therefore, because Nguyen's tort claims are barred by the statute of limitations and the Missouri Worker's Compensation Statute's exclusivity provision, Dobbs' Motion for Summary Judgment will be granted as to Counts III and IV of Nguyen's Complaint.

## VI.

### CONCLUSION

Accordingly, it is ORDERED that:

1) defendant's Motion for Summary Judgment (Doc. 31) is granted; and

2) plaintiff's Complaint is dismissed with prejudice, the parties to bear their own costs.